**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**AT KANSAS CITY**

**GERALYN MINSHEW; ROBERT J. MINSHEW; JANETTE STRONG; MARTHA LEVY, individually, and on behalf of her Spouse LAWRENCE H. LEVY, Deceased; PATRICK LANG; JUDITH BUZZARD-GERRITY; and JOHN CUCAR, individually, and on behalf of all others similarly situated,**

**Plaintiffs,**

**v.**

**DR. JOHN W. KRUMME, M.D.;**

**DR. BARTOSZ T. GROBELNY, M.D.;**

**DR. THEODORE KORECKIJ, M.D.;**

**DR. TIM ROBERTS, M.D.;**

**DR. SPENCER L. EAGAN, M.D.;**

**DR. ELLIOTT N. WITYK, DPM;**

**DR. JOHN W. SHOOK, M.D.; DICKSON-DIVELEY MIDWEST ORTHOPAEDIC CLINIC, LLC;**

**ADVANCED ORTHOPEDICS AND SPORTS MEDICINE, PA D/B/A SANO ORTHOPEDICS;**

**SAINT LUKE'S HOSPITAL OF KANSAS CITY;**

**SAINT LUKE'S SOUTH HOSPITAL,**

**Case No. 2:25-cv-02467-DDC-ADM**

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**INC.;**

**SAINT LUKE'S HEALTH SYSTEM, INC.;**

**SAINT LUKE'S PHYSICIAN GROUP, INC., also known as Saint Luke's Medical Group;**

**JOHN DOES 1-50 INCLUSIVE; and**

**CORPORATE DOES 1-50 INCLUSIVE.**

**Defendants.**

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Geralyn Minshew and her husband Robert J. Minshew, Janette Strong, Martha Levy, Martha Levy, Spouse of Lawrence H. Levy, Deceased, Patrick Lang, Judith Buzzard-Gerrity, and John Cucar ("Plaintiffs"), individually, and on behalf of all others similarly situated (collectively, "Class members"), by and through their attorney(s) bring this Class Action Complaint against Defendants Dr. John W. Krumme, M.D. ("Krumme"), Dr. Bartosz T. Grobelny, M.D. ("Grobelny"), Dr. Theodore Koreckij, M.D. ("Koreckij"), Dr. Tim Roberts, M.D. ("Roberts"), Dr. Elliott N. Wityk, DPM ("Wityk"), Dickson-Diveley Midwest Orthopaedic Clinic, LLC ("Dickson-Diveley"), Advanced Orthopedics and Sports Medicine, PA D/B/A Sano Orthopedics ("Sano"), Saint Luke's Hospital of Kansas City ("Saint Luke's Hospital"), Saint Luke's South Hospital ("Saint Luke's South Hospital"), Saint Luke's Health System, Inc. ("Saint Luke's Health System"), Saint Luke's Physician Group, Inc. ("Saint Luke's Physicians"), John Does 1-50 Inclusive, and Corporate Does 1-50 Inclusive, (collectively, "Defendants"), and complains and alleges upon

personal knowledge as to himself and information and belief as to all other matters. Venue lies in this jurisdiction because one or more of the Defendants transact business in Johnson County, Kansas and because one or more named Plaintiffs reside in Kansas and/or were harmed in Kansas at the time this cause of action arose.

## INTRODUCTION

1. Plaintiffs bring this class action against Defendants for their failure to secure and safeguard Plaintiffs Minshew, Strong, Levy, Levy, Lang, Buzzard-Gerrity and Cucar and other individuals by failing to implement and maintain reasonable and adequate sterilization measures to secure, protect, and safeguard their patients against inflection and unnecessary illness.
2. During 2022 and 2023, one and/or more Defendants failed to implement and maintain reasonable and adequate sterilization measures to secure, protect, and safeguard their patients against inflection and unnecessary illness.
3. Upon information and belief, Defendants failed properly clean and repair operating room instruments, this included, but may not be limited to, using old and/or rusting instruments during procedures and operations, and/or allowing bugs and other pests to be present around and/or in the operating room. See https://www.kansascity.com/news/local/article280635485.html (last visited November 20, 2024), attached here as *Exhibit 1* (which is incorporated by reference as if fully set forth herein).
4. Defendants owed a duty to Plaintiffs and Class members to implement and maintain reasonable and adequate sterilization measures to secure, protect, and safeguard their patients against

inflection and unnecessary illness. Defendants breached that duty by, among other things, failing to implement and maintain reasonable sterilization procedures and practices to protect patient.

5. As a result of Defendants' inadequate sterilization and breach of their duties and obligations, the Plaintiffs were harmed, and Plaintiffs and Class members were exposed to and/or harmed by inadequate safety standards, and/or improperly charged financially. This action seeks to remedy these failings and their consequences. Plaintiffs bring this action on behalf of any and/or all persons who were affected, which occurred at least between and/or approximately during 2021 and/or 2023, to present.

6. Plaintiffs, on behalf of themselves and any and/or all other Class members, assert claims for negligence, negligence per se, breach of fiduciary duty, breach of express contract, breach of implied contract, unjust enrichment, violations of the Kansas Consumer Protection Act, and medical malpractice, seeks declaratory relief, injunctive relief, monetary damages, statutory damages, equitable relief, and all other relief authorized by law.

## PARTIES

***Plaintiffs Geralyn Minshew and Robert J. Minshew (Kansas Citizens, Bonner Springs)***

7. Plaintiffs are citizens of Kansas and human beings over the age of 18 and are also residents of the State of Kansas.

8. Plaintiff Geralyn Minshew obtained healthcare services from Defendant Dr. Grobelny and Defendants Saint Luke's Hospital, Saint Luke's Physicians, and Saint Luke's Health System.

9. Upon information and belief, Plaintiff Robert J. Minshew, and/or his wife Geralyn Minshew are and/or were financially responsible for expenses related to healthcare services received by Geralyn Minshew which are at issue in this action.
10. Based on representations made by Defendants, Plaintiffs believed Defendants had implemented and maintained reasonable sterilization procedures and practices to protect them. With this belief in mind, Plaintiffs provided permission for medical care in connection with receiving healthcare services provided by Defendants.
11. At any and/or all relevant times, Defendants owed a duty to provide proper sterilization procedures, proper sanitary conditions, and proper healthcare services.
12. As a direct result of Defendants conduct and/or omissions, Plaintiffs have suffered injury and damages including, inter alia, a substantial and imminent risk of exposure to inadequate sterilization procedures and practices; and/or in Plaintiff Geralyn Minshew's case actual infection resulting from such unsanitary and/or poor sterilization practices; and overpayment for services that did not include adequate sterilization procedures and practices.

***Plaintiff Janette Strong (Kansas Citizen, Oskaloosa)***

13. Plaintiff is a citizen of Kansas and a human being over the age of 18 and is also a resident of the State of Kansas.
14. Plaintiff Janette Strong obtained healthcare services from Defendants Dr. Krumme, Dickson-Diveley, Saint Luke's Hospital, Saint Luke's South Hospital, Saint Luke's Physicians, and Saint Luke's Health System.

15. Based on representations made by Defendants, Plaintiff believed Defendants had implemented and maintained reasonable sterilization procedures and practices to protect her. With this belief in mind, Plaintiff provided permission for medical care in connection with receiving healthcare services provided by Defendants.
16. At any and/or all relevant times, Defendants owed a duty to provide proper sterilization procedures, proper sanitary conditions, and proper healthcare services.
17. As a direct result of Defendants conduct and/or omissions, Plaintiff has suffered injury and damages including, inter alia, a substantial and imminent risk of exposure to inadequate sterilization procedures and practices; and/or in Plaintiff Janette Strong's case actual infection resulting from such unsanitary and/or poor sterilization practices; and overpayment for services that did not include adequate sterilization procedures and practices.

***Plaintiff Martha Levy, individually, and on behalf of her Spouse Lawrence H. Levy, Deceased (Kansas Citizen, Prairie Village)***

18. Plaintiff is a citizen of Kansas and human being over the age of 18 and is also a resident of the State of Kansas.
19. Lawrence H. Levy, who is now deceased, obtained healthcare services from Defendants Dr. Koreckij, Saint Luke's Hospital, Saint Luke's Physicians and Saint Luke's Health System.
20. Martha Levy obtained healthcare services from Defendants Dr. Koreckij, Saint Luke's Hospital, Saint Luke's Physicians and Saint Luke's Health System.

21. Upon information and belief, Plaintiff Martha Levy, and/or her Husband Lawrence H. Levy are financially responsible for expenses related to healthcare services received by Lawrence H. Levy and herself which are at issue in this action.

22. Based on representations made by Defendants, Lawrence H. Levy believed Defendants had implemented and maintained reasonable sterilization procedures and practices to protect Lawrence H. Levy. With this belief in mind, Lawrence H. Levy provided permission for medical care in connection with receiving healthcare services provided by Defendants.

23. Based on representations made by Defendants, Martha Levy believed Defendants had implemented and maintained reasonable sterilization procedures and practices to protect Martha Levy. With this belief in mind, Martha Levy provided permission for medical care in connection with receiving healthcare services provided by Defendants.

24. At any and/or all relevant times, Defendants owed a duty to provide proper sterilization procedures, proper sanitary conditions, and proper healthcare services.

25. As a direct result of Defendants conduct and/or omissions, Plaintiffs have suffered injury and damages including, inter alia, a substantial and imminent risk of exposure to inadequate sterilization procedures and practices; and/or in Lawrence H. Levy's case actual infection resulting from such unsanitary and/or poor sterilization practices; and/or in Martha Levy's case actual infection resulting from such unsanitary and/or poor sterilization practices and overpayment for services that did not include adequate sterilization procedures and practices.

***Plaintiff Patrick Lang (Kansas Citizen, Shawnee)***

26. Plaintiff is a citizen of Kansas and a human being over the age of 18 and is also a resident of the State of Kansas.

27. Plaintiff Patrick Lang obtained healthcare services from Defendants Dr. Roberts, Sano Orthopedics, Saint Luke's South Hospital, Saint Luke's Physicians, and Saint Luke's Health System.

28. Based on representations made by Defendants, Plaintiff believed Defendants had implemented and maintained reasonable sterilization procedures and practices to protect him. With this belief in mind, Plaintiff provided permission for medical care in connection with receiving healthcare services provided by Defendants.

29. At any and/or all relevant times, Defendants owed a duty to provide proper sterilization procedures, proper sanitary conditions, and proper healthcare services.

30. As a direct result of Defendants conduct and/or omissions, Plaintiff has suffered injury and damages including, inter alia, a substantial and imminent risk of exposure to inadequate sterilization procedures and practices; and/or in Plaintiff Patrick Lang's case actual infection resulting from such unsanitary and/or poor sterilization practices; and overpayment for services that did not include adequate sterilization procedures and practices.

***Plaintiff Judith Buzzard-Gerrity (Kansas Citizen)***

31. Plaintiff is a citizen of Kansas and a human being over the age of 18 and is also a resident of the State of Kansas.

32. Plaintiff Judith Buzzard-Gerrity obtained healthcare services from Defendants Dr. Eagan, Dr. Shook, Saint Luke's South Hospital, Saint Luke's Physicians, and Saint Luke's Health System.

33. Based on representations made by Defendants, Plaintiff believed Defendants had implemented and maintained reasonable sterilization procedures and practices to protect her. With this belief in mind, Plaintiff provided permission for medical care in connection with receiving healthcare services provided by Defendants.

34. At any and/or all relevant times, Defendants owed a duty to provide proper sterilization procedures, proper sanitary conditions, and proper healthcare services.

35. As a direct result of Defendants conduct and/or omissions, Plaintiff has suffered injury and damages including, inter alia, a substantial and imminent risk of exposure to inadequate sterilization procedures and practices; and/or in Plaintiff Judith Buzzard-Gerrity's case actual infection resulting from such unsanitary and/or poor sterilization practices; and overpayment for services that did not include adequate sterilization procedures and practices.

***Plaintiff John Cucar (Kansas Citizen)***

36. Plaintiff is a citizen of Kansas and human being over the age of 18 and is also a resident of the State of Kansas.

37. Plaintiff John Cucar obtained healthcare services from Defendants Dr. Wityk, Sano Orthopedics, Saint Luke's South Hospital, Saint Luke's Physicians, and Saint Luke's Health System.

38. Based on representations made by Defendants, Plaintiff believed Defendants had implemented and maintained reasonable sterilization procedures and practices to protect him. With this

belief in mind, Plaintiff provided permission for medical care in connection with receiving healthcare services provided by Defendants.

39. At any and/or all relevant times, Defendants owed a duty to provide proper sterilization procedures, proper sanitary conditions, and proper healthcare services.

As a direct result of Defendants conduct and/or omissions, Plaintiff has suffered injury and damages including, inter alia, a substantial and imminent risk of exposure to inadequate sterilization procedures and practices; and/or in Plaintiff John Cucar's case actual infection resulting from such unsanitary and/or poor sterilization practices; and overpayment for services that did not include adequate sterilization procedures and practices.

***Defendant John W. Krumme, M.D. (Kansas Citizen)***

40. Defendant Dr. John W. Krumme, M.D. is an orthopedic surgeon and resident of Kansas upon information and belief. He does work at 4320 Wornall Road, Suite 610, Kansas City, Missouri 64111. Dr. Krumme may be served at 4320 Wornall Road, Suite 610, Kansas City, Missouri 64111, and/or at his residence.

41. At all relevant times, Defendant Dr. Krumme was in the business of providing healthcare services to individuals, including Plaintiff Janette Strong.

42. At all times relevant, Defendant Dr. Krumme, was an employee and/or agent of Defendant Dickson-Diveley Orthopaedic Specialists and/or Saint Luke's South Hospital and/or Saint Luke's Health System and/or Saint Luke's Physician Group.

***Defendant Bartosz T. Grobelny, M.D. (Missouri Citizen)***

43. Defendant Dr. Bartosz T. Grobelny, M.D. is a general surgeon located at 4320 Wornall Road, Suite 710, Kansas City, Missouri 64111. Dr. Grobelny may be served at 4320 Wornall Road, Suite 710, Kansas City, Missouri 64111.

44. At all relevant times, Defendant Dr. Grobelny was in the business of providing healthcare services to individuals, including Plaintiff Geralyn Minshew.

45. At all times relevant, Defendant Dr. Grobelny, was an employee and/or agent of Defendant Saint Luke's South Hospital and/or Saint Luke's Health System.

***Defendant Thoedore Koreckij, M.D. (Missouri Citizen)***

46. Defendant Dr. Theodore Koreckij, M.D. is a general surgeon located at 3651 College Boulevard, Ste. 100B, Leawood, Kansas 66211. Dr. Grobelny may be served at 3651 College Boulevard, Ste. 100B, Leawood, Kansas 66211.

47. At all relevant times, Defendant Dr. Koreckij was in the business of providing healthcare services to individuals, including Plaintiff Geralyn Minshew.

48. At all times relevant, Defendant Dr. Koreckij, was an employee and/or agent of Defendant Saint Luke's South Hospital and/or Saint Luke's Health System.

***Defendant Tim Roberts, M.D. (Missouri Citizen)***

49. Defendant Dr. Tim Roberts, M.D. is a general surgeon located at 2861 NE Independence Ave, Ste. 201, Lee's Summit, Missouri 64064. Dr. Roberts may be served at 2861 NE Independence Ave, Ste. 201, Lee's Summit, Missouri 64064.

50. At all relevant times, Defendant Dr. Roberts was in the business of providing healthcare services to individuals, including Plaintiff Geralyn Minshew.

51. At all times relevant, Defendant Dr. Roberts, was an employee and/or agent of Defendant Sano Orthopedics, Saint Luke's South Hospital and/or Saint Luke's Health System.

***Defendant Spencer L. Eagan, M.D. (Kansas Citizen)***

52. Defendant Dr. Spencer L. Eagan, M.D. is a general surgeon located at 14340 Metcalf Avenue, Overland Park, Kansas 66223. Dr. Eagan may be served at 14340 Metcalf Avenue, Overland Park, Kansas 66223.

53. At all relevant times, Defendant Dr. Eagan was in the business of providing healthcare services to individuals, including Plaintiff Judith Buzzard-Gerrity

54. At all times relevant, Defendant Dr. Eagan, was an employee and/or agent of Defendant Saint Luke's South Hospital and/or Saint Luke's Health System.

***Defendant John W. Shook, M.D. (Kansas Citizen)***

55. Defendant Dr. John W. Shook, M.D. is a general surgeon located at 12541 Foster Street, Suite 100, Overland Park, Kansas 66213. Dr. Shook may be served at 12541 Foster Street, Suite 100, Overland Park, Kansas 66213.

56. At all relevant times, Defendant Dr. Shook was in the business of providing healthcare services to individuals, including Plaintiff Judith Buzzard-Gerrity

57. At all times relevant, Defendant Dr. Shook, was an employee and/or agent of Defendant Saint Luke's South Hospital and/or Saint Luke's Health System.

***Defendant Elliott N. Wityk, DPM (Missouri Citizen)***

58. Defendant Dr. Elliott N. Wityk, DPM, is a Doctor of Podiatry located at 11340 Nall Ave, Suite 200A, Overland Park, Kansas 66211. Dr. Wityk may be served at 11340 Nall Ave, Suite 200A, Overland Park, Kansas 66211.

59. At all relevant times, Defendant Dr. Wityk was in the business of providing healthcare services to individuals, including Plaintiff John Cucar.

60. At all times relevant, Defendant Dr. Wityk, was an employee and/or agent of Defendant Sano Orthopedics, Saint Luke's South Hospital and/or Saint Luke's Health System.

***Defendant Dickson-Diveley Midwest Orthopaedic Clinic, LLC (Missouri and Kansas Citizen)***

61. Defendant Dickson-Diveley Midwest Orthopaedic Clinic, LLC is a Kansas corporation with A principal place of business at 4320 Wornall Road, Suite 610, Kansas City, Missouri 64111. It may be served through its registered agent Dr. Brian J. Divelbiss, M.D., 3561 College Blvd, Leawood, Kansas 66211. This Defendant is a citizen of Kansas (registered LLC) and Missouri.

62. At all relevant times, Defendant Dickson-Diveley was in the business of providing healthcare services to individuals, including, but not limited to Plaintiff Strong.

***Defendant Advanced Orthopedics and Sports Medicine, PA D/B/A Sano Orthopedics (Kansas and Missouri Citizen)***

63. Defendant Advanced Orthopedics and Sports Medicine, PA D/B/A Sano Orthopedics is a Kansas Professional Association with A principal place of business at 2861 NE Independence Ave., Suite 201, Lees Summit, Missouri 64064, served through Dr. Matthew Daggett, O.D. It

may be served through its registered agent SBLSG Registered Agent, LLC, at 9001 W 110th St., Ste. 230, Overland Park, Kansas 66210.

64. At all relevant times, Defendant Advanced Orthopedics and Sports Medicine, PA D/B/A Sano Orthopedics was in the business of providing healthcare services to individuals, including Plaintiff Lang.

***Defendant Saint Luke's Health System, Inc. (Missouri and Kansas Citizen)***

65. Defendant Saint Luke's Health System, Inc. is a Kansas corporation with A principal place of business at 901 E. 104th Street, Kansas City, Missouri 64131; it is a citizen of Kansas and Missouri. It may be served through its registered agent Corporation Service Company, 1100 SW Wanamaker Road, Suite 103, Topeka, Kansas 66604.

66. At all relevant times, Defendant Saint Luke's Health System, Inc. was in the business of providing healthcare services to individuals, including but not limited to the named Plaintiffs, and/or members of the putative class.

***Defendant Saint Luke's Hospital of Kansas City (Missouri and Kansas Citizen)***

67. Upon information and belief, Defendant Saint Luke's Hospital of Kansas City is a unit and entity controlled by Defendant Saint Luke's Health System, Inc.

68. Defendant Saint Luke's Hospital of Kansas City is a Missouri corporation with a principal place of business at 4401 Wornall Road, Kansas City, Missouri 64111; it is a citizen of Kansas and Missouri. It may be served through its registered agent Corporation Service Company, 1100 SW Wanamaker Road, Suite 103, Topeka, Kansas 66604.

69. At all relevant times, Defendant Saint Luke's Hospital was in the business of providing healthcare services to individuals, including Plaintiff.

***Defendant Saint Luke's South Hospital (Missouri and Kansas Citizen)***

70. Upon information and belief, Defendant Saint Luke's Hospital of Kansas City is a unit and entity controlled by Defendant Saint Luke's Health System, Inc.

71. Defendant Saint Luke's South Hospital is not apparently listed as a corporation in either Kansas or Missouri yet has a principal place of business at 12300 Metcalf Ave., Overland Park, Kansas 66213. Whether it is a d/b/a of Defendant Saint Luke's Health System and/or Defendant Saint Luke's Hospital of Kansas City, it is a citizen of Kansas and Missouri. Thus, it may be served through a registered agent Corporation Service Company, 1100 SW Wanamaker Road, Suite 103, Topeka, Kansas 66604.

72. At all relevant times, Defendant Saint Luke's South Hospital was in the business of providing healthcare services to individuals, including Plaintiff.

***Defendant Saint Luke's Physician Group, Inc. (Missouri and Kansas Citizen)***

73. Upon information and belief, Defendant Saint Luke's Physician Group, Inc., is a unit and entity controlled by Defendant Saint Luke's Health System, Inc.

74. Saint Luke's Physician Group, Inc.—also known as Saint Luke's Medical Group—is incorporated under the laws of Kansas and has a principal place of business in Missouri; it is a citizen of Kansas and Missouri.

75. Defendant Saint Luke's Physician Group, Inc., is a Kansas corporation with a principal place of business at 901 E. 104th St. Mailstop 3000, Kansas City, Missouri 64131. It is a citizen of Kansas and Missouri. It may be served through its registered agent Corporation Service Company, 1100 SW Wanamaker Road, Suite 103, Topeka, Kansas 66604.

76. Upon information and belief, the corporate Defendants with St. Luke's in any entity's named here are closely interrelated and operate without functional distinction with respect to employees and jointly employed Plaintiffs, such that the acts of one are the acts of all. References to one Saint Luke's entity or to "Saint Luke's" include all corporate Defendants unless otherwise specified.

## JURISDICTION AND VENUE

77. The Court has subject matter jurisdiction over Plaintiffs' claims pursuant to K.S.A. § 20-301 and § 60-606(a), inter alia.

78. This Court has personal jurisdiction over Defendant Saint Luke's Health System because the entity is incorporated under the laws of Kansas.

79. This Court has personal jurisdiction over Defendants because Defendant Saint Luke's Health System, and others are citizens of Kansas, and/or are incorporated under the laws of Kansas and Missouri, has a place of business in Johnson County, Kansas, and does significant business in Kansas.

80. This Court has personal jurisdiction over Defendant Saint Luke's South Hospital because though it is an entity incorporated under the laws of Missouri and Kansas, has a principal place of business in Johnson County, Kansas, and does significant business in Kansas.

81. This Court has personal jurisdiction over Defendant Dickson-Diveley because it is an entity incorporated under the laws of Kansas, and yet has a principal place of business in Jackson County, Missouri, and does significant business in Missouri.

82. This Court has personal jurisdiction over Defendant Advanced Orthopedics and Sports Medicine, PA D/B/A Sano Orthopedics, because though it is an entity incorporated under the laws of Missouri, has a principal place of business in Johnson County, Kansas, and does significant business in Kansas.

83. This Court has personal jurisdiction over Defendant Dr. Krumme because he transacts business within this state and makes or performs contracts within this state.

84. This Court has personal jurisdiction over Defendant Dr. Grobelny because he transacts business within this state and makes or performs contracts within this state.

85. This Court has personal jurisdiction over Defendant Dr. Koreckij because he transacts business within this state and makes or performs contracts within this state.

86. This Court has personal jurisdiction over Defendant Dr. Roberts because he transacts business within this state and makes or performs contracts within this state.

87. This Court has personal jurisdiction over Defendant Dr. Eagan because he transacts business within this state and makes or performs contracts within this state.

88. This Court has personal jurisdiction over Defendant Dr. Shook because he transacts business within this state and makes or performs contracts within this state.

89. This Court has personal jurisdiction over Defendant Dr. Wityk because he transacts business within this state and makes or performs contracts within this state.

90. Venue is proper in this Circuit pursuant to K.S.A. § 20-301 and § 60-606(a) because Saint Luke's Hospital and/or Saint Luke's South Hospital are situated in Johnson County, Dickson-Diveley, Advanced Orthopedics and Sports Medicine, PA D/B/A Sano Orthopedics, and Surgical Associate's principal place of business is in Jackson County, and a substantial part of the events giving rise to Plaintiffs' claims arose in Johnson County. Moreover, and all of the Saint Luke Defendants are citizens of Missouri and Kansas; any and/or all of the Saint Luke's Defendants named in this action conduct business in Kansas, and/or the Plaintiffs all reside and/or resided in Kansas at the times of their injuries.

## <u>FACTUAL ALLEGATIONS</u>

***The Conditions at Defendant Saint Luke's Hospital, System, and Saint Luke's South Hospitals***

91. In performing the surgeries at Defendant Saint Luke's Hospital and Saint Luke's South Hospital, each and every surgeon and their surgical teams followed standard hospital infection prevention protocol for each and every surgery, including hand hygiene practices, respiratory hygiene practices, urinary catheter infection prevention practices, general surgical infection prevention practices, and surgical site infection prevention practices.

92. One or more of the instruments used during each and every surgery of the Plaintiffs at Defendants' Hospitals which resulted in surgical site and/or blood-borne pathogen infections

were contaminated and had not been properly sterilized due to the above-described systemic failures of the Defendants.

93. At the time Defendants were systemically failing to comply with any protocol and industry standards for sterilizing surgical instruments.

94. Defendants knew or should have known that there was an increased and undue risk of infection to surgical patients, including Plaintiffs.

95. But for Defendants' conduct described herein, and surgery at Defendants Saint Luke's Hospital and Saint Luke's South Hospital, Plaintiffs would not have undergone surgery with instruments that were improperly sterilized, would not have been exposed to undue risk of surgical site infection, and would not have developed an infection and suffered damages as described herein.

96. Upon information and belief, Plaintiffs paid co-pays and/or out-of-pocket expenses related to healthcare services received by Defendants which are at issue in this action; at a minimum Plaintiffs are financially responsible for the purported services provided by Defendants.

***Plaintiffs, Surgeons, and Public's Reliance on Saint Luke's Defendants' Misrepresentations Regarding Sterilization***

97. Here, Plaintiffs' surgery was not emergency in nature, but rather, was elective such that each Plaintiff chose and agreed to having surgery at ***Saint Luke's Defendants*** locations.

98. At all relevant times, ***Saint Luke's Defendants*** represented and held themselves out to the consumer public, to licensing and regulatory entities, to patients, and to medical staff as licensed and accredited surgical facilities that were properly staffed, equipped and operated in

a manner that could safely provide aseptic surgical services to operative patients, including Plaintiffs and their surgeons, including by maintaining surgical asepsis through sterile technique and proper sterilization of surgical instruments and equipment.

99. At all relevant times, ***Saint Luke's Defendants*** represented and held out to patients and medical staff, including Plaintiffs and their surgeons, that surgical instruments processed by and utilized in surgeries at Defendants Saint Luke's Hospital and Saint Luke's South Hospital were fit for use and did not present an undue risk of infection for patients.

100. Plaintiffs, their surgeons, and the general public had/have a right to rely upon, and did rely upon, patients, and to medical staff that ***Saint Luke's Defendants*** provided safe and aseptic surgical services, including surgical instruments and equipment that were properly and safely sterilized.

101. Unbeknownst to Plaintiffs and/or their surgeons, and as set forth in further detail below, the representations made by ***Saint Luke's Defendants*** as described above were false, misleading, and/or deceptive.

102. Defendants, any and/or all of them, acted unreasonably and/or maliciously risked harm while being utterly indifferent to the consequences in a manner that was willful conduct, wanton conduct, fraud, and/or malice toward Plaintiffs that deserves to be punished.

***Plaintiffs Remained Unaware That Their Severe Infections Were Caused by Ongoing Sterilization Problems at Saint Luke's Defendants***

103. After recovering from his/their infections, not a single Plaintiff was ever informed by any Defendant or any provider that their infection had been caused by negligent conduct or by contaminated surgical instruments.

104. From the date of their surgery through October 17, 2023, Plaintiffs (and/or each and every Plaintiff) remained unaware that their infections were caused by negligent conduct or by contaminated surgical instruments.

105. From the date of their surgery through October 17, 2023, each and every Plaintiffs did not know, and could not have discovered with reasonable diligence, that their infections had been caused by Defendants' conduct and/or omissions.

106. In fact, using any applicable discovery standard, Plaintiffs could not have reasonably learned of the facts and circumstances contained in this action until approximately August and/or September 2023 when a former employee and whistleblower came forward with facts and allegations against Defendants and/or Defendant St. Luke's Health System, Inc.

107. Specifically, Elizabeth Bell, et al., have filed an employment lawsuit against St. Luke's Health System, Inc., et al., in Jackson County Circuit Court in Case Number 2416-CV20230. **See attached Exhibit 3 (which information is incorporated by reference as if set forth fully herein).**

***Plaintiffs, Their Injuries, and Their Legal Causes***

108. Upon information and belief, Defendants have never taken accountability or responsibility, and have never notified patients who were exposed to unsafe sterilization practices and/or procedures.

109. However, sometime on or after October 17, 2023, news media sources began to report about the sterilization breaches at Defendant Saint Luke's Hospital.

110. Plaintiffs had no opportunity to learn of the sterilization breaches at ***Saint Luke's Defendants*** until on or about sometime after various media sources publicized the information about the sterilization breaches.

111. Sometime on or about after April, Plaintiffs learned from news media, and/or a third-party relaying information from news media sources, that all operating rooms at Defendant Saint Luke's Hospital had these breaches in the process of sterilizing surgical instruments.

112. Sometime after October 17, 2023, Plaintiffs first discovered, this situation through media reports from the Whistleblower Ms. Bell, for the first time that their infections developed after their surgeries as a result of Defendants' facilities and because of the negligent conduct as described herein.

113. Plaintiffs did not know before October 17, 2023, and could not have discovered with reasonable diligence before October 17, 2023, that their infections were cause by negligence as described herein.

114. As a result, Plaintiffs have all filed this lawsuit within two years of the date that a reasonable person in their position could know, in the exercise of reasonable diligence, that they had been injured by the tortious conduct of Defendants.

***Plaintiff Janette Strong's Surgery***

115. Sometime in or around May 9, 2023, Plaintiff Janette Strong presented to the office of Defendant Dickson-Diveley for a consultation with Dr. Krumme.

116. During the consultation, the possibility of Plaintiff Janette Strong undergoing a total hip replacement was discussed.

117. Plaintiff Janette Strong wished to proceed with the procedure, and said procedure was scheduled for May 9, 2023.

118. On May 9, 2023, Plaintiff Janette Strong presented to Saint Luke's Hospital and the total hip replacement was completed.

119. Dr. Krumme served as the surgeon.

120. Following the May 9, 2023, surgery, Plaintiff Janette Strong experienced complications including an infection and required revision surgery.

121. Upon information and belief Plaintiff Janette Strong more likely than not developed, inter alia, what he has been told is and/or was a "dirty infection" from one and/or more of the Defendants conduct and/or omissions.

122. It was later discovered that on or around the time of the surgery, Defendant Saint Luke's Hospital was experiencing issues with the sanitation and sterilization of their tools, including but not limited to the types of tools that were used during Plaintiff Strong's surgery.

***Plaintiff Geralyn Minshew's Surgery***

123. Sometime in or around April 13, 2022, Plaintiff Geralyn Minshew presented to the office of Dr. Bartosz T. Grobelny for a consultation with Dr. Grobelny.

124. During the consultation, the possibility of Plaintiff Geralyn Minshew undergoing a knee replacement was discussed.

125. Plaintiff Geralyn Minshew wished to proceed with the procedure, and said procedure was scheduled for on or about July 2023.

126. On or about July 2023, Plaintiff Geralyn Minshew presented to Saint Luke's Hospital and the brain surgery was completed.

127. Defendant Dr. Bartosz T. Grobelny served as the surgeon.

128. Following the July 2023, surgery, Plaintiff Geralyn Minshew experienced complications including an infection and required revision surgery.

129. Upon information and belief Plaintiff Geralyn Minshew more likely than not developed, inter alia, what she has been told is and/or was a "dirty infection" from one and/or more of the Defendants conduct and/or omissions.

130. It was later discovered that on or around the time of the surgery, Defendant Saint Luke's Hospital was experiencing issues with the sanitation and sterilization of their tools, including but not limited to the types of tools that were used during Plaintiff Minshew's surgery.

131. Specifically, Plaintiff Minshew's surgeries were:

a. April 5, 2022 (brain surgery for stimulator, lead sensors, and other implants);

b. April 13, 2022 (brain surgery and implant and three lead extension implants, inter alia);

c. February 1, 2023 (brain surgery and implant and explant on cranial, with two different devices with different serial numbers, inter alia);

d. February 23, 2023 (revision and removal of anything not previously explanted); and

e. To date, her underlying condition has still not been addressed or corrected.

***Decedent Lawrence H. Levy's Surgery***

132. Sometime in or around 2022, Lawrence H. Levy presented to the office of Dr. Theodore Koreckij for a consultation with Dr. Koreckij.

133. During the consultation, the possibility of Lawrence H. Levy undergoing a hip replacement was discussed.

134. Lawrence H. Levy wished to proceed with the procedure, and said procedure was scheduled for on or about September 2022.

135. On or about September 2022, Lawrence H. Levy presented to Saint Luke's Hospital and the hip replacement was completed.

136. Defendant Dr. Theodore Koreckij served as the surgeon.

137. Following the July 2023, surgery, Lawrence H. Levy experienced complications including an infection and required revision surgery.

138. Upon information and belief Lawrence H. Levy more likely than not developed, inter alia, what she has been told is and/or was a "dirty infection" from one and/or more of the Defendants conduct and/or omissions.

139. It was later discovered that on or around the time of the surgery, Defendant Saint Luke's Hospital was experiencing issues with the sanitation and sterilization of their tools, including but not limited to the types of tools that were used during Lawrence H. Levy's surgery.

140. Lawrence H. Levy passed away from complications on or about August 13, 2022.

***Plaintiff Martha Levy's Surgery***

141. Sometime in or around 2022 or 2023, Martha Levy presented to the office of Dr. Theodore Koreckij for a consultation with Dr. Koreckij.

142. During the consultation, the possibility of Martha Levy undergoing spinal surgery was discussed.

*143.* Martha Levy wished to proceed with the procedure, and said procedure was scheduled for on or about February 2023.

144. On or about February, Martha Levy presented to Saint Luke's Hospital and the spinal surgery was completed.

145. Defendant Dr. Theodore Koreckij served as the surgeon.

146. Following the February 2023, surgery, Martha Levy experienced complications including an infection and required revision surgery.

147. Upon information and belief Martha Levy more likely than not developed, inter alia, what she has been told is and/or was a "dirty infection" from one and/or more of the Defendants conduct and/or omissions.

148. It was later discovered that on or around the time of the surgery, Defendant Saint Luke's Hospital was experiencing issues with the sanitation and sterilization of their tools, including but not limited to the types of tools that were used during Martha Levy's surgery.

***Plaintiff Patrick Lang's Surgery***

149. Sometime in or around 2019, Plaintiff Patrick Lang presented to the office of Dr. Tim Roberts for a consultation with Dr. Roberts.

150. During the consultation, the possibility of Plaintiff Patrick Lang undergoing an appendix removal was discussed.

151. Plaintiff Patrick Lang wished to proceed with the procedure, and said procedure was scheduled for on or about July 2019.

152. On or about July 2019, Plaintiff Patrick Lang presented to Saint Luke's South Hospital and the appendix removal was completed.

153. Defendant Dr. Tim Roberts served as the surgeon.

154. Following the July 2019, surgery, Plaintiff Patrick Lang experienced complications including an infection and required surgery.

155. Upon information and belief Plaintiff Patrick Lang more likely than not developed, inter alia, what he has been told is and/or was a "dirty infection" from one and/or more of the Defendants conduct and/or omissions.

156. It was later discovered that on or around the time of the surgery, Defendant Saint Luke's South Hospital was experiencing issues with the sanitation and sterilization of their tools, including but not limited to the types of tools that were used during Plaintiff Patrick Lang's surgery.

***Plaintiff Judith Buzzard-Gerrity's Surgery***

157. Sometime in or around April or May 2022, Plaintiff Judith Buzzard-Gerrity presented to the office of Dr. Spencer L. Eagan and/or Dr. John W. Shook for a mammogram.

158. During the consultation, a biopsy was performed, and Plaintiff later learned that she had breast cancer.

159. Upon informing Plaintiff Buzzard-Gerrity of her cancer diagnosis, the possibility of Plaintiff Judith Buzzard-Gerrity undergoing breast cancer surgery was discussed.

160. Plaintiff Judith Buzzard-Gerrity wished to proceed with the procedure, and said procedure was scheduled for on or about May 4, 2022.

161. On or about May 2022, Plaintiff Judith Buzzard-Gerrity presented to Saint Luke's South Hospital and the breast cancer surgery was completed.

162. Defendant Dr. Spencer L. Eagan and Dr. John W. Shook served as the surgeons.

163. Following the May 2022 surgery, Plaintiff Judith Buzzard-Gerrity experienced complications including an infection and required infectious disease and wound care.

164. Upon information and belief Plaintiff Judith Buzzard-Gerrity more likely than not developed, inter alia, what she has been told is and/or was a "dirty infection" from one and/or more of the Defendants conduct and/or omissions.

165. It was later discovered that on or around the time of the surgery, Defendant Saint Luke's South Hospital was experiencing issues with the sanitation and sterilization of their tools, including but not limited to the types of tools that were used during Plaintiff Judith Buzzard-Gerrity's surgery.

***Plaintiff John Cucar's Surgery***

166. Sometime in or around 2024, Plaintiff John Cucar presented to the office of Dr. Elliott N. Wityk for a consultation with Dr. Wityk.

167. During the consultation, the possibility of Plaintiff John Cucar undergoing surgery on his ankle was discussed.

168. Plaintiff John Cucar wished to proceed with the procedure, and said procedure was scheduled for on or about December 2024.

169. On or about December 2024, Plaintiff John Cucar presented to Saint Luke's South Hospital, and the ankle surgery was completed.

170. Defendant Dr. Elliott N. Wityk, DPM served as the surgeon.

171. Following the December 2024, surgery, Plaintiff John Cucar experienced complications including an infection and required surgery.

172. Upon information and belief Plaintiff John Cucar more likely than not developed, inter alia, what he has been told is and/or was a "dirty infection" from one and/or more of the Defendants conduct and/or omissions.

It was later discovered that on or around the time of the surgery, Defendant Saint Luke's South Hospital was experiencing issues with the sanitation and sterilization of their tools, including but not limited to the types of tools that were used during Plaintiff John Cucar's surgery.

***Damages Sustained by Plaintiffs and Class Members***

173. Plaintiffs and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of exposure to unsafe, unsanitary, and improper sterilization practices and procedures; (ii) being charged financially for unsafe, unsanitary, and improper sterilization practices and procedures; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unsafe, unsanitary, and improper sterilization practices and procedures ; (iv) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the unsafe, unsanitary, and improper sterilization practices and procedures; (v) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the unsafe, unsanitary, and improper sterilization practices and procedures as a result of the Defendants' conduct

and/or omissions; and (vi) and/or for overpayment for services that were received without adequate sterilization practices and procedures.

## CLASS ALLEGATIONS

174. This action is brought and may be properly maintained as a class action pursuant to Kan. R. Civ. P. 60-223.

175. Plaintiffs brings this action on behalf of themselves and all members of the following Class of similarly situated persons:

> Any and/or all United States residents, except for Missouri citizens, who were exposed and/or charged by Defendants despite Defendants failure to maintain proper sterilization practices and procedures as required by Federal Law and/or State Law.

176. Excluded from the Class are Defendants, and its affiliates, parents, subsidiaries, employees, officers, agents, and directors; as well as the judge(s) presiding over this matter and the clerks of said judge. Additionally, Defendants Dr. Groelny, Dr. Krumme, Dr, Koreckij, Dr. Roberts, Dr. Eagan, Dr. Shook, Dr. Wityk, Dickson-Diveley Midwest Orthopaedic Clinic, LLC, and/or Advanced Orthopedics and Sports Medicine, PA D/B/A Sano Orthopedics, may have involvement in many other cases, though conceivably not as many as Defendants Saint Luke's Hospital, Saint Luke's South Hospital, Saint Luke's Physicians, and Saint Luke's Health System.

177. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

178. The members in the Class are so numerous that joinder of each of the Class members in a single proceeding would be impracticable. According to the Kansas City Star, in 2017, Defendant Saint Luke's Hospital "surgery team performed a record 4,282 surgeries, including 419 in December alone." See https://www.kansascity.com/news/local/community/lsjournal/article198478454.html (last visited November 20, 2024), attached here as Exhibit 2.

179. Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, inter alia:

a. Whether Defendants had a duty to implement and maintain reasonable sterilization procedures and practices to provide proper healthcare to Plaintiffs;

b. Whether Defendants had duties not to expose the Plaintiffs and Class members to improper sterilization procedures and practices;

c. Whether Defendants failed to exercise reasonable care to secure and implement sterilization procedures and practices to Plaintiffs and Class members;

d. Whether an implied contract existed between Class members and Defendants, providing that Defendants would implement and maintain reasonable sterilization procedures and practices to protect Plaintiffs and Class members;

e. Whether Defendants engaged in unfair, unlawful, or deceptive practices by failing to implement and maintain reasonable sterilization procedures and practices for Plaintiffs and Class members;

f. Whether Defendants breached their duties to protect Plaintiffs' and Class members from improper sterilization procedures and practices; and

g. Whether Plaintiffs and Class members are entitled to damages and the measure of such damages and relief.

180. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

181. Plaintiffs' claims are typical of the claims of the Class. Plaintiffs (and/or their spouses), like all proposed members of the Class, were exposed improper sterilization procedures and practices. Plaintiffs and Class members were injured by the same wrongful acts, practices, and omissions committed by Defendants, as described herein. Plaintiffs' claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

182. Plaintiffs will fairly and adequately protect the interests of the Class members. Plaintiffs are adequate representatives of the Class in that they have no interests adverse to, or that conflict with, the Class they seek to represent. Plaintiffs have retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

183. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiffs and Class members are relatively small compared to the burden and expense that would be required to

individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress from Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
***Against All Defendants***

184. Plaintiffs reallege and incorporate by reference all foregoing and succeeding paragraphs and information as if fully set forth herein.

185. Plaintiffs bring this claim individually and on behalf of all Class members against Defendants Grobelny, Krumme, Koreckij, Roberts, Eagan, Shook, Wityk, Saint Luke's Hospital, Saint Luke's South Hospital, Saint Luke's Physicians and Saint Luke's Health System.

186. Defendants Grobelny, Krumme, Koreckij, Roberts, Eagan, Shook, Wityk, Saint Luke's Hospital, Saint Luke's South Hospital, Saint Luke's Physicians and Saint Luke's Health System owed Plaintiffs a general duty to protect them from injury in the course of rendering services to Plaintiffs Minshew, Strong, Levy, Lang, and Buzzard-Gerrity.

187. Defendants Grobelny, Krumme, Koreckij, Roberts, Eagan, Shook, Wityk, Saint Luke's Hospital, Saint Luke's South Hospital, Saint Luke's Physicians and Saint Luke's Health System violated that duty and was thereby negligent.

188. It was reasonably foreseeable that Defendants Grobelny, Krumme, Koreckij, Roberts, Eagan, Shook, Wityk, Saint Luke's Hospital, Saint Luke's South Hospital, Saint Luke's Physicians and Saint Luke's Health System's negligence would cause harm to Plaintiffs.

189. As a direct and proximate result of Defendants Grobelny, Krumme, Koreckij, Roberts, Eagan, Shook, Wityk, Saint Luke's Hospital, Saint Luke's South Hospital, Saint Luke's Physicians and Saint Luke's Health System's conduct, Plaintiffs suffered severe pain and injury, had to undergo additional treatments and hospital admissions, was left with permanent damage, endured significant emotional distress, and suffered other damage as well, including death.

190. Defendant Dickson-Diveley is liable by *respondeat superior* because of the actions and failures of Dr. Krumme.

191. Defendant Sano is liable by *respondeat superior* because of the actions and failures of Defendant Dr. Roberts and Dr. Wyityk.

192. Defendants Saint Luke's Hospital, Saint Luke's South Hospital, Saint Luke's Physicians and Saint Luke's Health System owed a duty to Plaintiffs and Class members to exercise reasonable care in sanitizing and sterilizing tools used for operations in their possession, custody, or control.

193. Defendants Saint Luke's Hospital, Saint Luke's South Hospital, Saint Luke's Physicians and Saint Luke's Health System knew or should have known the risks of improperly sanitizing and sterilizing too tools used for operations in their possession, custody, or control.

194. Given the nature of Saint Luke's Hospital, Saint Luke's South Hospital, Saint Luke's Physicians, and Saint Luke's Health System's businesses, Saint Luke's Hospital, Saint Luke's South Hospital and Saint Luke's Physicians Saint Luke's Health System should have identified the vulnerabilities to their sterilization department and prevented the issues from occurring.

195. At all relevant times, Defendants owed Plaintiffs a duty to exercise that degree of care expected of reasonable hospital corporations under the same or similar circumstances.

196. Additionally, Defendants stood in a special relationship with their patients, including Plaintiffs, such that Defendants owed Plaintiffs a duty of reasonable care premised on that special relationship.

197. The duties owed to Plaintiffs by Defendants included but was not limited to an affirmative duty to warn of any risks or dangerous conditions that it was either aware of or of which it should have been reasonably aware.

198. These risks and dangers included, but were not limited to, known contamination problems within Defendants Saint Luke's Hospital, Saint Luke's South Hospital, and affiliates, known failures to properly clean and sterilize surgical instruments, unsterile surgical equipment, understaffed sterilization departments, and unsafe sterilization procedures and post-operative infections occurring in conjunction with improper sterilization.

199. At all relevant times, Defendants breached their duty and was negligent by:

a. Failing to adequately establish and enforce facility policies and procedures

b. Failing to ensure the timely and appropriate selection, development, implementation, direction, coordination, and enforcement of hospital systems and policies to ensure the reasonable and adequate sterilization of surgical equipment on the date of Plaintiff(s)' procedure;

c. Failing to adequately staff their facilities for the volume and complexity of scheduled surgical cases;

d. Failing to ensure adequate pre-cleaning of instruments before they left the OR;

e. Hiring Defendants' staff without ensuring that they had the required certifications;

f. Failing to ensure that Defendants' staff were properly trained and capable of completing their duties;

g. Failing to monitor and supervise Defendants' staff to ensure competence;

h. Failing to properly train/discipline/retrain Defendants' staff who had repeated contamination errors;

i. Failing to ensure sterile surgical tools were available at the start of surgical cases;

j. Failing to act upon sterilization issues or concerns once they were identified;

k. Failing to ensure vendors wore surgical scrubs over personal clothing in restricted areas;

l. Failing to reasonably and adequately respond to reported instances of unsterile surgical equipment;

m. Failing to reasonably and adequately respond to reported instances of unsafe practices in the Defendants' facilities;

n. Failing to reasonably and adequately respond to reported instances of the Defendants staff being improperly staffed both in number and qualifications of the staff;

o. Failing to provide reasonable and adequate training regarding the reporting of any unsterile instruments;

p. Failing to provide reasonable and adequate training regarding the reporting of any unsafe or unsterile practices;

q. Failing to provide reasonable and adequate training regarding the reporting of any unsafe or unsterile conditions;

r. Failing to have the necessary sterilization policies and protocols in place;

s. Failing to take the appropriate steps to address and correct complaints, reports, and concerns regarding the process of sterilizing surgical instruments,

t. Failing to reasonably and adequately monitor and enforce the sterilization policies and protocols;

u. Failing to reasonably support employees who did warn about the circumstances described herein;

v. Failing to ensure that the instrument washers were properly maintained;

w. Allowing patients, including Plaintiffs, to undergo an operation in an environment which Defendants knew or should have known was unsafe, unsterile and unregulated such that the health and safety of patients was predictably at risk for suffering infection and serious life-threatening consequences as a result;

x. Failing to ensure that SSIs were adequately tracked, investigated, and reported; and,

y. Failing to encourage staff to report sterilization concerns and problems to the proper managerial, oversight, licensing, and regulatory personnel and/or entities.

z. As a direct and proximate result of the negligence of Defendants as described herein, Plaintiffs have suffered and will continue to suffer injuries, damages and losses including but not limited to medical costs and expenses, lost wages, loss of household services, and other economic losses and damages, as well as noneconomic losses and damages including but not limited to mental anguish, pain and suffering, inconvenience, impairment of the quality of life, and emotional stress Spouses have suffered a loss of spousal consortium.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount in excess of $75,000.00 together with interest, for punitive damages, attorney fees, the costs of this action, and other appropriate relief the Court deems just and proper.

**COUNT II**

**NEGELIGENCE PER SE**

**(Federal CMS Regulations)**

***Against All Defendants***

200. Plaintiffs realleges and incorporates by reference all foregoing and succeeding paragraphs and information as if fully set forth herein.

201. Plaintiffs brings this claim individually and on behalf of all Class members against all Defendants only.

202. At all relevant times, the Secretary of Health and Human Services was empowered under 42 U.S.C. § 1302 to make and publish such rules and regulations as necessary for the efficient administration of the Secretary's function in administering Medicare and Medicaid.

203. At all relevant times, the Secretary of Health and Human Services, through CMS, promulgated various rules and regulations as conditions of participation in Medicare and/or Medicaid.

204. At all relevant times, certain of the regulations duly promulgated by CMS were in effect, had the force of law, and were applicable to facilities such as Defendants operate.

205. For example, at all relevant times, Defendants had a legal duty to maintain an effective governing body that is legally responsible for the conduct of the hospital and ensures that services provided at the hospital, like the cleaning of surgical instruments, are provided in a safe manner and in accordance with professional standards under, inter alia, various laws including but not limited to Kan. Admin. Regs. § 28-34-13 (as authorized by K.S.A. 65-431), et seq, and section 42 CFR 482.12, and sections 19 CSR 30-20.114, 19 CSR 30-20.011 and 19 CSR 30-20-30.

206. Likewise, at all relevant times, Defendants. Had a legal duty to develop, implement, and maintain an effective, ongoing, hospital-wide, data-driven quality assessment and performance improvement program under, inter alia, various laws including but not limited to section 42 CFR 482.21, Kan. Admin. Regs. § 28-34-13 (as authorized by K.S.A. 65-431), et seq, and sections 19 CSR 30-20.114, 19 CSR 30-20.011 and 19 CSR 30-20.30.

207. Accordingly, at all relevant times, Defendants had a legal duty to provide a sanitary environment to avoid sources and transmission of infections and communicable diseases under, inter alia, various laws including but not limited to section 42 CFR 482.42, Kan. Admin. Regs. § 28-34-13 (as authorized by K.S.A. 65-431), et seq, and sections 19 CSR 30-20.114, 19 CSR 30-20.011 and 19 CSR 30-20.30.

208. Further, at all relevant times, Defendants had a legal duty to provide surgical services that were well-organized and provided in accordance with acceptable standards of practice under, inter alia, various laws including but not limited to section 42 CFR 482.51, Kan. Admin. Regs. § 28-34-13 (as authorized by K.S.A. 65-431), et seq, and sections 19 CSR 30-20.114, 19 CSR 30-20.011 and 19 CSR 30-20.30.

209. At all relevant times, Defendants had a legal duty to abide by the requirements of, inter alia, various laws including but not limited to section 42 C.F.R. Part 482, Subparts A, B, C, D, and E, Kan. Admin. Regs. § 28-34-13 (as authorized by K.S.A. 65-431), et seq, and sections 19 CSR 30-20.114, 19 CSR 30-20.011 and 19 CSR 30-20.30.

210. At all relevant times, such regulations were promulgated and enforced in order to protect the safety of the public, including patients like the Plaintiffs named above, and the Plaintiff Class at facilities and providers like Defendants.

211. At all relevant times Defendants breached their legal duties under such state regulations and were negligent as described elsewhere herein.

212. Plaintiffs are members of the class of persons which the aforementioned statutes were intended to protect.

213. As a direct and proximate result of the negligence per se of Defendants as describe herein, Plaintiffs have suffered and will continue to suffer injuries, damages and losses including but not limited to medical costs and expenses, lost wages, loss of household services, and other economic losses and damages, as well as noneconomic losses and damages including but not limited to mental anguish, pain and suffering, inconvenience, impairment of the quality of life, and emotional stress Spouses have suffered a loss of spousal consortium.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount in excess of $75,000.00 together with interest, for punitive damages, attorney fees, the costs of this action, and other appropriate relief the Court deems just and proper.

**COUNT III**
**BREACH OF FIDUCIARY DUTY**
***Against All Defendants***

214. Plaintiffs reallege and incorporate by reference all foregoing and succeeding paragraphs and information as if fully set forth herein.

215. This claim is brought by Plaintiffs on behalf of all Class members who exposed, harmed, and/or finally harmed because of Defendants improper sterilization practices and/or procedures.

216. Plaintiffs and Class members trusted Defendants in confidence, believing that Defendants would protect them from unsafe sterilization practices and/or procedures. Plaintiffs and Class members would not have consented to any procedure in which they would not be adequately protected. Defendants accepted Plaintiffs' and Class members' consent to perform surgery and thus created a fiduciary relationship between Defendants and Plaintiffs and Class

members. In light of this relationship, Defendants must act primarily for the benefit of I patients, which includes safeguarding and protecting Plaintiffs and Class Members from infection.

217. Due to the nature of the relationship between Defendants and Plaintiffs and Class members, Plaintiffs and Class members were entirely reliant upon Defendants to ensure that they were adequately protected. Plaintiffs and Class members had no way of verifying or influencing the nature and extent of Defendants' practices and procedures concerning sterilization.

218. Defendants have a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of their relationship.

219. Defendants had and/or have a fiduciary duty to provide and obtain informed consent from Plaintiffs and Class Matters regarding any medical services provided to Plaintiffs and Class Members.

220. It breached that duty by failing to comply with state law and otherwise failing to safeguard Plaintiffs and Class members from any harm resulting from Defendants' practices and procedures concerning sterilization.

221. As a direct and proximate result of Defendants' breach(es) of their fiduciary duties, Plaintiffs and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of exposure to unsafe, unsanitary, and improper sterilization practices and procedures; (ii) being charged financially for unsafe, unsanitary, and improper sterilization practices and procedures; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unsafe, unsanitary, and improper sterilization practices and procedures ; (iv) lost opportunity costs associated with efforts

attempting to mitigate the actual and future consequences of the unsafe, unsanitary, and improper sterilization practices and procedures; (v) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the unsafe, unsanitary, and improper sterilization practices and procedures as a result of the Defendants conduct and/or omissions; and (vi) and/or for overpayment for services that were received without adequate sterilization practices and procedures.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount in excess of $75,000.00 together with interest, for punitive damages, attorney fees, the costs of this action, and other appropriate relief the Court deems just and proper.

**COUNT IV**
**BREACH OF EXPRESS CONTRACT**
***Against Saint Luke's Defendants Only***

222. Plaintiffs reallege and incorporate by reference all foregoing and succeeding paragraphs and information as if fully set forth herein.

223. This claim is brought by Plaintiffs on behalf of all Class members who exposed, harmed, and/or finally harmed because of Defendants improper sterilization practices and/or procedures.

224. Plaintiffs and Class members and Defendants entered into written agreements regarding the services that Defendants were to provide to Plaintiffs and Class members. Plaintiffs and Class members paid Defendants monies, directly or through an insurance carrier and consequently provided Defendants as consideration for these agreements and/or services.

225. Plaintiffs and Class members complied with the express contract when they paid Defendants and presented to Defendants for surgery.

226. Defendants breached their obligations under the contracts between themselves and Plaintiffs and Class members by failing to implement and maintain reasonable sterilization practices and/or procedures as required by State Law.

227. As a direct and proximate result of Defendants' breach(es) of their fiduciary duties, Plaintiffs and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of exposure to unsafe, unsanitary, and improper sterilization practices and procedures; (ii) being charged financially for unsafe, unsanitary, and improper sterilization practices and procedures; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unsafe, unsanitary, and improper sterilization practices and procedures ; (iv) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the unsafe, unsanitary, and improper sterilization practices and procedures; (v) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the unsafe, unsanitary, and improper sterilization practices and procedures as a result of the Defendants conduct and/or omissions; and (vi) and/or for overpayment for services that were received without adequate sterilization practices and procedures.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount in excess of $75,000.00 together with interest, for punitive damages, attorney fees, the costs of this action, and other appropriate relief the Court deems just and proper.

**COUNT V**
**BREACH OF IMPLIED CONTRACT**
***Against All Defendants***

228. Plaintiffs realleges and incorporates by reference all foregoing and succeeding paragraphs and information as if fully set forth herein.

229. This claim is brought by Plaintiffs on behalf of all Class members who exposed, harmed, and/or finally harmed because of Defendants improper sterilization practices and/or procedures.

230. In connection with receiving healthcare services, Plaintiffs and all other Class members entered into implied contracts with Defendants.

231. Pursuant to these implied contracts, Plaintiffs and Class members. Plaintiffs and Class members paid Defendants monies, directly or through an insurance carrier and consequently provided Defendants as consideration for these agreements. In exchange, Defendants agreed to, among other things, and Plaintiffs and Class members understood that Defendants would: (1) provide services to Plaintiffs and Class members; (2) take reasonable measures to protect the safety and confidentiality of Plaintiffs and Class members; and (3) protect Plaintiffs and Class members from improper sterilization practices and procedures required by state laws and regulations and industry standards.

232. The safety of Plaintiffs was a material term of the implied contracts between Plaintiffs and Class members, on the one hand, and Defendants, on the other hand. Had Plaintiffs and Class members known that Defendants would not adequately protect their Plaintiffs and Class Members, they would not have elected to receive healthcare or other services from Defendants.

233. Plaintiffs and Class members performed their obligations under the implied contract when they presented to Defendants for surgery and paid for healthcare or other services from Defendants.

234. Defendants breached their obligations under I implied contracts with Plaintiffs and Class members by failing to implement and maintain reasonable sterilization practices and/or procedures as required by State Law.

235. Defendants' breach of their obligations of their implied contracts with Plaintiffs and Class members directly resulted in harm and the injuries to Plaintiffs and all other Class members.

236. As a direct and proximate result of Defendants' breach(es) of their fiduciary duties, Plaintiffs and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of exposure to unsafe, unsanitary, and improper sterilization practices and procedures; (ii) being charged financially for unsafe, unsanitary, and improper sterilization practices and procedures; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unsafe, unsanitary, and improper sterilization practices and procedures ; (iv) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the unsafe, unsanitary, and improper sterilization practices and procedures; (v) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the unsafe, unsanitary, and improper sterilization practices and procedures as a result of the Defendants conduct and/or omissions; and (vi) and/or for overpayment for services that were received without adequate sterilization practices and procedures.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount in excess of $75,000.00 together with interest, for punitive damages, attorney fees, the costs of this action, and other appropriate relief the Court deems just and proper.

## COUNT VI
## UNJUST ENRICHMENT
***Against All Defendants***

237. Plaintiffs realleges and incorporates by reference all foregoing and succeeding paragraphs and information as if fully set forth herein.

238. This claim is plead in the alternative to the breach of implied contract claim.

239. Plaintiffs and Class members conferred a monetary benefit upon Defendants in the form of monies paid to Defendants for healthcare services.

240. Defendants accepted or had knowledge of the benefits conferred upon them by Plaintiffs and Class members.

241. As a result of Defendants' conduct, Plaintiffs and Class members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable sterilization practices and procedures that Plaintiffs and Class members paid for, and those payments without reasonable sterilization practices and procedures that they received.

242. Defendants should not be permitted to retain the money belonging to Plaintiffs and Class members because Defendants failed to adequately implement the sterilization procedures for themselves that Plaintiffs and Class members paid for and that were otherwise mandated by state and local laws and/or industry standards.

243. Plaintiffs and Class members have no adequate remedy at law.

244. Defendants should be compelled to provide for the benefit of Plaintiffs and Class members all unlawful proceeds received by them as a result of the conduct and omission alleged herein.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount in excess of $75,000.00 together with interest, for punitive damages, attorney fees, the costs of this action, and other appropriate relief the Court deems just and proper.

**COUNT VII**
**VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT**
**K.S.A. 50-623 ("KCPA")**
***Against Saint Luke's Defendants Only***

245. Plaintiffs realleges and incorporates by reference all foregoing and succeeding paragraphs and information as if fully set forth herein.

246. This claim is brought by Plaintiffs on behalf of all Class members who presented to Defendants for surgery and/or were charged despite improper sterilization practices and procedures.

247. Defendants offers, and continues to offer, healthcare and related services in the State of Kansas.

248. Plaintiffs and other Class members purchased and received healthcare services from Defendants for personal, family, and/or household purposes.

249. Defendants engaged in unlawful and unfair practices in violation of the KCPA by failing to, or contracting with companies that failed to, implement, and maintain reasonable

sterilization measures to protect their patients in a manner that complied with applicable laws, regulations, and industry standards.

250. As a result of the Defendants' conduct and omissions, Plaintiffs and Class members have lost property in the form of their financial obligation to Defendants. Further, Defendants' failure to adopt reasonable sterilization practices will force Plaintiffs and other Class members to spend time or money to recover from their injuries and/or losses.

251. As a direct and proximate result of Defendants' breach(es) of their fiduciary duties, Plaintiffs and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of exposure to unsafe, unsanitary, and improper sterilization practices and procedures; (ii) being charged financially for unsafe, unsanitary, and improper sterilization practices and procedures; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unsafe, unsanitary, and improper sterilization practices and procedures ; (iv) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the unsafe, unsanitary, and improper sterilization practices and procedures; (v) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the unsafe, unsanitary, and improper sterilization practices and procedures as a result of the Defendants conduct and/or omissions; and (vi) and/or for overpayment for services that were received without adequate sterilization practices and procedures.

252. Plaintiffs seeks all relief authorized under the KCPA, including attorney's fees and such equitable relief as the Court deems proper to protect Plaintiffs and Class members from Defendants' unlawful actions as describe herein.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount in excess of $75,000.00 together with interest, for punitive damages, attorney fees, the costs of this action, and other appropriate relief the Court deems just and proper.

## COUNT VIII
## MEDICAL MALPRACTICE

***Against Defendants Grobelny, Saint Luke's Hospital, Saint Luke's Physicians, and Saint Luke's Health System for Plaintiffs Minshew***
***Against Defendants Krumme, Dickson-Diveley, and Saint Luke's Defendants for Plaintiff Strong***
***Against Defendants Koreckij, Saint Luke's Hospital, Saint Luke's Physicians, and Saint Luke's Health System for Plaintiffs Levy***
***Against Defendants Roberts, Sano, Saint Luke's South, Saint Luke's Physicians, and Saint Luke's Health System for Plaintiff Lang***
***Against Defendants Eagan, Shook, Saint Luke's South, Saint Luke's Physicians, and Saint Luke's Health System for Plaintiff Buzzard-Gerrity***
***Against Defendants Wytick, Sano, Saint Luke's South, Saint Luke's Physicians, and Saint Luke's Health System for Plaintiff Cucar***
***Against any applicable Defendant with respect to Plaintiff Class***

253. Plaintiffs incorporates by reference the foregoing and succeeding paragraphs and information as if set forth fully herein.

254. Plaintiff Geralyn Minshew was a patient of Dr. Grobelny at all times relevant to this Petition.

255. Plaintiff Janette Strong was a patient of Dr. Krumme (and therefore Defendant Dickson-Diveley) at all times relevant to this Petition.

256. Lawrence H. Levy, deceased, was a patient of Dr. Koreckij at all times relevant to this Petition.

257. Martha Levy was a patient of Dr. Koreckij at all times relevant to this Petition.

258. Plaintiff Patrick Lang was a patient of Dr. Roberts (and therefore Defendant Sano Orthopedics) at all times relevant to this Petition.

259. Plaintiff Judith Buzzard-Gerrity was a patient of Dr. Eagan and Dr. Shook at all times relevant to this Petition.

260. Plaintiff John Cucar was a patient of Dr. Wityk (and therefore Defendant Sano Orthopedics) at all times relevant to this petition.

261. Defendants Dr. Grobleny, Saint Luke's Hospital, Saint Luke's Physicians and Saint Luke's Health System had a duty to use and exercise the degree of care, skill and proficiency that is commonly exercised by ordinarily skillful, careful, and prudent physicians engaged in similar practices under the same or similar circumstances in the course of rendering medical services to Plaintiff Minshew.

262. Defendants Saint Luke's Hospital, Saint Luke's Physicians and Saint Luke's Health System and Dr. Grobelny's performance during Plaintiff Minshew's surgeries violated said duty, and were thereby negligent.

263. Defendants Dickson-Diveley, Saint Luke's Defendants, and Dr. Krumme had a duty to use and exercise the degree of care, skill and proficiency that is commonly exercised by ordinarily skillful, careful, and prudent physicians engaged in similar practices under the same or similar circumstances in the course of rendering medical services to Plaintiff Strong.

264. Defendants Dickson-Diveley, Saint Luke's Defendants and Dr. Krumme's performance during Plaintiff Strong's surgeries violated said duty, and were thereby negligent.

265. Defendants Dr. Koreckij, Saint Luke's Hospital, Saint Luke's Physicians and Saint Luke's Health System had a duty to use and exercise the degree of care, skill and proficiency that is

commonly exercised by ordinarily skillful, careful, and prudent physicians engaged in similar practices under the same or similar circumstances in the course of rendering medical services to Lawrence H. Levy, deceased.

266. Defendants Saint Luke's Hospital, Saint Luke's Physicians and Saint Luke's Health System and Dr. Koreckij's performance during Lawrence H. Levy's surgeries violated said duty, and were thereby negligent.

267. Defendants Dr. Koreckij, Saint Luke's Hospital, Saint Luke's Physicians and Saint Luke's Health System had a duty to use and exercise the degree of care, skill and proficiency that is commonly exercised by ordinarily skillful, careful, and prudent physicians engaged in similar practices under the same or similar circumstances in the course of rendering medical services to Martha Levy.

268. Defendants Saint Luke's Hospital, Saint Luke's Physicians and Saint Luke's Health System and Dr. Koreckij's performance during Martha Levy's February 2023, surgery violated said duty, and were thereby negligent.

269. Defendants Sano, Saint Luke's South Hospital, Saint Luke's Physicians and Saint Luke's Health System and Defendant Dr. Roberts had a duty to use and exercise the degree of care, skill and proficiency that is commonly exercised by ordinarily skillful, careful, and prudent physicians engaged in similar practices under the same or similar circumstances in the course of rendering medical services to Plaintiff Lang.

270. Defendants Sano, Saint Luke's South Hospital, Saint Luke's Physicians and Saint Luke's Health System and Defendant Dr. Roberts' performance during Plaintiff Lang's surgery violated said duty, and were thereby negligent.

271. Defendants Dr. Eagan, Dr. Shook, Saint Luke's Hospital, Saint Luke's Physicians and Saint Luke's Health System had a duty to use and exercise the degree of care, skill and proficiency that is commonly exercised by ordinarily skillful, careful, and prudent physicians engaged in similar practices under the same or similar circumstances in the course of rendering medical services to Plaintiff Buzzard-Gerrity.

272. Defendants Saint Luke's Hospital, Saint Luke's Physicians and Saint Luke's Health System and Dr. Eagan's and Dr. Shook's performance during Plaintiff Buzzard-Gerrity's surgeries, which surgeries violated said duty, and Dr. Eagan and Dr. Shook were thereby negligent.

273. Defendants Sano, Saint Luke's South Hospital, Saint Luke's Physicians and Saint Luke's Health System and Defendant Dr. Wityk had a duty to use and exercise the degree of care, skill and proficiency that is commonly exercised by ordinarily skillful, careful, and prudent physicians engaged in similar practices under the same or similar circumstances in the course of rendering medical services to Plaintiff Cucar.

274. Sano, Saint Luke's South Hospital, Saint Luke's Physicians and Saint Luke's Health System and Defendant Dr. Wityk's performance during Plaintiff Cucar's surgery violated said duty, were thereby negligent.

275. As a direct and proximate result of Defendants Saint Luke's Hospital, Saint Luke's Physicians and Saint Luke's Health System and Dr. Grobelny's conduct, Plaintiff Minshew suffered severe pain and injury, had to undergo additional treatments and hospital admissions, was left with permanent damage, endured significant emotional distress, and suffered other damages as well.

276. As a direct and proximate result of Defendants Dickson-Diveley, Saint Luke's Defendants, and Dr. Krumme's's conduct, Plaintiff Strong suffered severe pain and injury, had to undergo additional treatments and hospital admissions, was left with permanent damage, endured significant emotional distress, and suffered other damages as well.

277. As a direct and proximate result of Defendants Dr. Koreckij, Saint Luke's Hospital, Saint Luke's Physicians and Saint Luke's Health System and Dr. Koreckij's's conduct, Lawrence H. Levy suffered severe pain and injury, had to undergo additional treatments and hospital admissions, was left with permanent damage, endured significant emotional distress, and suffered other damages as well. Lawrence H. Levy ultimately passed away from his injuries.

278. As a direct and proximate result of Defendants Dr. Koreckij, Saint Luke's Hospital, Saint Luke's Physicians and Saint Luke's Health System and Dr. Koreckij's's conduct, Martha Levy suffered severe pain and injury, had to undergo additional treatments and hospital admissions, was left with permanent damage, endured significant emotional distress, and suffered other damages as well.

279. As a direct and proximate result of Defendants Sano, Saint Luke's South Hospital, Saint Luke's Physicians and Saint Luke's Health System and Defendant Dr. Roberts's conduct, Plaintiff Lang suffered severe pain and injury, had to undergo additional treatments and hospital admissions, was left with permanent damage, endured significant emotional distress, and suffered other damages as well.

280. As a direct and proximate result of Defendants Saint Luke's South Hospital, Saint Luke's Physicians and Saint Luke's Health System and Defendant Dr. Eagan's and Dr. Shook's conduct, Plaintiff Buzzard-Gerrity suffered severe pain and injury, had to undergo additional

treatments and hospital admissions, was left with permanent damage, endured significant emotional distress, and suffered other damages as well.

281. As a direct and proximate result of Defendants Sano, Saint Luke's South Hospital, Saint Luke's Physicians and Saint Luke's Health System and Defendant Dr. Wityk's conduct, Plaintiff Cucar suffered severe pain and injury, had to undergo additional treatments and hospital admissions, was left with permanent damage, endured significant emotional distress, and suffered other damages as well.

282. Defendants Saint Luke's Hospital, Saint Luke's Physicians, and Saint Luke's Health System are liable by *respondeat superior* because of the actions and failures of Dr. Grobleny.

283. Defendants Dickson-Diveley and Saint Luke's Defendants are liable by *respondeat superior* because of the actions and failures of Dr. Krumme.

284. Defendants Saint Luke's Hospital, Saint Luke's Physicians, and Saint Luke's Health System are liable by *respondeat superior* because of the actions and failures of Dr. Koreckij.

285. Defendants Sano Orthopedics, Saint Luke's South Hospital, Saint Luke's Physicians and Saint Luke's Health System are liable by *respondeat superior* because of the actions and failures of Dr. Roberts.

286. Defendants Saint Luke's Hospital, Saint Luke's Physicians, and Saint Luke's Health System are liable by *respondeat superior* because of the actions and failures of Dr. Eagan and Dr. Shook.

287. Defendants Sano Orthopedics, Saint Luke's South Hospital, Saint Luke's Physicians and Saint Luke's Health System are liable by *respondeat superior* because of the actions and failures of Dr. Wityk.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount in excess of $75,000.00 together with interest, for punitive damages, attorney fees, the costs of this action, and other appropriate relief the Court deems just and proper.

**COUNT VIIII**
**FRAUD**
***Against All Defendants***

288. Plaintiffs incorporates by reference the foregoing and succeeding paragraphs and information as if set forth fully herein.

289. Defendants offered medical services to Plaintiff in exchange for payment from Plaintiff(s) and/or their insurance companies.

290. Defendants used their provider-patient relationship with Plaintiff to take monies from Plaintiff under guise that they would be receiving proper medical services and for surgery and/or were charged despite improper sterilization practices and procedures.

291. At the time of making the representations, Defendants had knowledge that they were false or untrue.

292. Defendants made the representations with the intent that Plaintiffs would rely on the Defendants' representations.

293. Plaintiffs, being unaware that Defendants' representations were false or untrue, did reasonably rely and act on Defendants' representations.

294. Plaintiff claims total damages in an amount in excess of $75,000, together with interest, costs of this action and other appropriate relief.

WHEREFORE, Plaintiffs demand judgment against Defendants in an amount in excess of $75,000.00 together with interest, for punitive damages, attorney fees, the costs of this action, and other appropriate relief the Court deems just and proper.

## REQUEST FOR RELIEF

Plaintiffs, individually and on behalf of all other members of the Class, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A. Certifying the Class as requested herein, designating Plaintiffs as Class Representatives, and appointing Plaintiffs' counsel as Class Counsel;

B. Awarding Plaintiffs and the Class appropriate monetary relief, including actual damages, statutory damages, restitution, punitive and/or exemplary damages, and disgorgement;

C. Awarding Plaintiffs and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiffs, on behalf of themselves and the Class, seeks appropriate injunctive relief designed to prevent Defendants from further harm regarding unsafe sterilization practices and procedures as required by state law;

D. Awarding Plaintiffs and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E. Awarding Plaintiffs and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Awarding Plaintiffs and the Class such other favorable relief as allowable under law.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs further respectfully demand their Constitutional Right to trial by jury of twelve (12) persons on all issues and claims in this Class Action Petition.

Dated: March 18, 2026

**Respectfully Submitted,**

**CROSS LAW FIRM, LLC**

By: /s/Gerald Lee Cross, Jr.
Gerald Lee Cross, Jr. (Mo. 23573)
Elizabeth J. McKinney (admitted pro hac vice)
7930 Santa Fe Drive, 1st Floor
Overland Park, Kansas 66204
O58fice Tel: (816) 454 -5297
Fax: (913) 904-1650
lcross@cross-lawfirm.com
ejmckinney@cross-lawfirm.com
***ATTORNEY FOR PLAINTIFFS***

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all persons registered for ECF as of that date.

*/s/ Gerald Lee Cross, Jr.*
Attorney for Plaintiffs