## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **GERALYN MINSHEW, et al., individually and on behalf of all others similarly situated,** | **Case No. 25-2467-DDC-ADM** |
| **Plaintiffs,** | |
| **v.** | |
| **JOHN W. KRUMME, et al.,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiffs filed this putative class-action lawsuit in Kansas state court. They've sued a series of doctors and medical institutions, alleging that defendants performed surgeries with unsterile tools and caused them to sustain infections. Defendants removed the action to this federal court. A series of ripe motions are pending for decision. These include:

- defendants Bartosz T. Grobelny and John W. Shook's Motion to Dismiss (Doc. 7);

- defendant Spencer L. Eagan's Motion to Dismiss (Doc. 12);

- defendants Saint Luke's Health System, Inc.; Saint Luke's Hospital of Kansas City; Saint Luke's Physician Group, Inc.; and Saint Luke's South Hospital, Inc.'s Motion to Dismiss (Doc. 15);

- defendants Dickson-Diveley Midwest Orthopedic Clinic, LLC; Theodore Koreckij; and John W. Krumme's Motion for Judgment on the Pleadings (Doc. 25);

- defendants Advanced Orthopedics and Sports Medicine, PA; and Tim Roberts's Motion for Judgment on the Pleadings (Doc. 34); and

- plaintiffs' Motion to Strike (Doc. 29).

Defendants' many motions overlap, advancing essentially the same arguments. So, the court addresses them all in this Order. Because all the substantive motions turn on the factual allegations in the Petition, the court begins its work by summarizing those factual allegations.

## I.        Background

The court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to [plaintiffs], the non-moving part[ies]." *Purgatory Recreation I, LLC v. United States*, 157 F.4th 1173, 1182 (10th Cir. 2025) (quotation cleaned up).

Plaintiffs allege that defendants—physicians, medical clinics, and hospitals—failed to adopt and implement adequate sterilization procedures. Doc. 1-3 at 4 (Pet. ¶ 2). These failures, plaintiffs say, resulted in doctors using old and rusty instruments for surgeries and in bugs and pests roaming around in operating rooms during surgeries they scheduled with defendants. *Id.* at 4 (Pet. ¶ 3). Plaintiffs developed infections after their surgeries, requiring revision surgeries. *E.g.*, *id.* at 21, 22 (Pet. ¶ 111, 119). Their infections were "dirty infections," caused by doctors using unsterile equipment at Saint Luke's Hospital and Saint Luke's South Hospital. *See, e.g.*, *id.* at 21–22, 25 (Pet. ¶¶ 112–13, 120–21, 146–47).

The Petition asserts nine claims on behalf of the putative class: negligence; negligence per se; breach of fiduciary duty; breach of express contract; breach of implied contract; unjust enrichment; violation of the Kansas Consumer Protect Act (KCPA); medical malpractice; and fraud. *Id.* at 30–51 (Pet. ¶¶ 168–273).

## II.        Legal Standard

Some of the defendants have moved to dismiss under Rule 12(b)(6); others have moved under Rule 12(c). Courts evaluate a Rule 12(c) motion using the same standard as a motion to

dismiss under Rule 12(b)(6).  *Sanchez v. U.S. Dep't of Energy*, 870 F.3d 1185, 1199 (10th Cir. 2017).

Under Rule 12(b)(6), a party may move to dismiss an action for failing "to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that factual allegations in the complaint are true, but it's "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III.      Analysis

This Order's analysis unfolds in this fashion:  The court's analysis starts with plaintiffs' claims asserting negligence per se.  Then, the court addresses plaintiffs' KCPA claims.  Finally,

3

the court takes up the thrust of defendants' motions—that plaintiffs' negligence and malpractice claims subsume their fraud and contract theories.

### A.      Negligence Per Se

In Kansas,[1] negligence per se has two elements:  "'(1) violation of a statute, ordinance, or regulation, and (2) the violation must be a cause of the damages resulting therefrom.'"  *Pullen v. West*, 92 P.3d 584, 593 (Kan. 2004) (quoting *Cullip v. Domann*, 972 P.2d 776, 779 (Kan. 1999)).  "Kansas law limits negligence per se to violations of a statute for which the legislature intended to create a private cause of action."  *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1280 (10th Cir. 2021); *Pullen*, 92 P.3d at 593.  "Kansas courts generally use a two-part test in determining whether a private right of action is created."  *Pullen*, 92 P.3d at 594.  "First, the party must show that the statute was designed to protect a specific group of people rather than to protect the general public."  *Id.*  "Second, the court must review legislative history in order to determine whether a private right of action was intended."  *Id.*  Here, the Petition cites federal, Kansas, and Missouri regulations.  But none of these laws make plaintiffs' negligence-per-se claims viable.  Take them in turn.

### 1.      Federal Regulations

Start with the cited federal regulations.  The Petition cites various Medicare regulations trying to support plaintiffs' negligence-per-se claims.  Doc. 1-3 at 36–37 (Pet. ¶¶ 189–93) (citing

---

[1]      Though no party has briefed the issue expressly, all parties seem to agree that Kansas law governs this action.  The court concurs.  "The Court applies the forum state's choice-of-law rules to determine which state's substantive law governs a claim."  *Nordwald v. Brightlink Commc'ns, LLC*, 603 F. Supp. 3d 1030, 1040 (D. Kan. 2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Where, as here, "a party fails to make 'a clear showing that another state's law should apply,' Kansas choice of law principles require a court to default to Kansas substantive law."  *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 982 (10th Cir. 2014) (quoting *In re K.M.H.*, 169 P.3d 1025, 1032 (Kan. 2007)).  The court thus applies Kansas law.

42 C.F.R. §§ 482.12, 482.21, 482.42, 482.51). But Congress didn't intend for these regulations to create private causes of action. Courts routinely hold that Medicare regulations don't confer such individual rights. *E.g.*, *Massie v. Lovelace Med. Grp.*, No. 24-1133 DHU/SCY, 2025 WL 1098997, at *7 (D.N.M. Apr. 14, 2025) (explaining that "Medicaid/Medicare regulations do not provide a private right of action to a private party"); *Neiberger v. Hawkins*, 208 F.R.D. 301, 310 (D. Colo. 2002) (explaining that 42 C.F.R. § 482 sets out "condition[s] of participation in Medicare" and does "not private a private right of action"). Without a legislative intent to confer a private cause of action, these regulations can't support plaintiffs' negligence-per-se claims under Kansas law. *See Brooks*, 985 F.3d at 1280.

Trying to avoid this outcome, plaintiffs, citing a law firm's blog post, insist that the Medicare Secondary Payment Act (MSP) creates a private cause of action. Doc. 30 at 9. The MSP "provides generally that Medicare insurance is secondary to employer-provided group health insurance covering Medicare beneficiaries and that Medicare will not be liable for expenses which the private insurer ought to pay." *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 523 (8th Cir. 2007). This law "grants the Medicare beneficiary a private right of action for double damages against an insurer or other primary payer that fails to pay the amounts it owes on the insured's behalf." *Id.* at 524. But the MSP's cause of action simply has nothing to do with plaintiffs' allegations here. Plaintiffs never allege that they're Medicare beneficiaries, or that an employer-provided insurance plan failed to make payments on their behalf.

Nor does the MSP's cause of action furnish any reason to believe that Congress intended to create private causes of action through Medicare regulations. Just the opposite. The MSP demonstrates that Congress knows how to create a private cause of action. It's failure to do so for Medicare regulations suggests that it didn't intend to create one. *See Stauch v. Zmuda*, No.

24-3027-JWL, 2024 WL 1140952, at *8 (D. Kan. Mar. 15, 2024) ("[T]he Supreme Court has held that if a federal statute does not explicitly create a cause of action, the strong presumption is that no private cause of action should be implied.").

In short, plaintiffs have failed to show that Congress intended to create a private cause of action with Medicare regulations—which is fatal to plaintiffs' claims for negligence per se predicated on these regulations. Plaintiffs' attempts to transform Kansas regulations into a private cause of action fare no better, as the court explains, next.

### 2.    Kansas Regulations

Plaintiffs next cite Kan. Admin Reg. § 28-34-13 to support their negligence-per-se claim. Doc. 1-3 at 36–37 (Pet. ¶¶ 189–93). This regulation sets out some requirements for sterilization practices by hospitals. But the court detects no reason to believe that this regulation authorizes a private cause of action.

The implementing statute—which sets out provisions for licensing hospitals—authorizes adoption of regulations for "the purposes of this law in promoting safe and adequate treatment of individuals in medical care facilities *in the interest of public health, safety and welfare*." Kan. Stat. Ann. § 65-431(a) (emphasis added). To be sure, this statute references "promoting safe and adequate treatment of individuals in medical care facilities[.]" *Id.* But the statute also makes clear that its ultimate purpose is "public health, safety and welfare." *Id.* While portions of these hospital regulations "apply to certain groups of individuals, the overall purpose of" them is not confined to a specific group. *Pullen*, 92 P.3d at 596.

The court thus concludes that plaintiffs haven't carried their burden to show that the regulation they cite "was designed to protect a specific group of people rather than to protect the general public." *Id.* at 594. But even if they had carried this burden, the court still would conclude that the regulations don't generate a private cause of action. That's so because

6

plaintiffs have failed to demonstrate any legislative history for the regulation they invoke or the statute authorizing that regulation. *See* Doc. 38 at 12 (discussing only the legislative history of federal regulations). And the court's own research failed to unearth any information about the legislative process that led to these laws. But several aspects of these laws suggest that they can't support a private cause of action.

For example, where "legislative history is lacking, Kansas courts have considered the number of amendments to the statute and whether the legislature granted a private right of action in such amendments." *LeTourneau v. Venture Corp.*, 15-CV-2629-JAR, 2017 WL 2378331, at *5 (D. Kan. June 1, 2017). Here, the Kansas legislature has amended the authorizing statute six times since adopting the original version in 1947.[2] None of these amendments added a private cause of action, suggesting that the legislature didn't intend for one to exist. *See Kan. State. Bank & Tr. Co. v. Specialized Transp. Servs., Inc.*, 819 P.2d 587, 640 (Kan. 1991) (concluding that—when legislature had amended a statute five times—it would have created a cause of action specifically if it had intended to do so).

What's more, "Kansas appellate courts generally will not infer a private cause of action where a statute provides criminal penalties but does not mention civil liability." *Pullen*, 92 P.3d at 597. That's the situation here. The Kansas Medical Facilities Survey and Construction Act— which contains the relevant authorizing statute here—imposes criminal liability on hospitals who operate without a license. Kan. Stat. Ann. § 65-439. And the Act contains no private cause of action. Kansas case law thus supports a presumption that the legislature didn't intend to create a private cause of action. Defendants' alleged wrong—failing to sterilize properly—"became a wrong only because the legislature made it so[.]" *Pullen*, 92 P.3d at 597 (quotation cleaned up).

---

[2]    *See* Kan. Stat. Ann. § 65-431, https://ksrevisor.gov/statutes/chapters/ch65/065_004_0031.html (last visited Mar. 4, 2026) (listing amendments).

As such, "the statutorily created wrong is to be remedied in the manner prescribed by the legislature." *Id.* (quotation cleaned up).

One final nail in the coffin. Courts interpreting analogous hospital regulations from other jurisdictions agree: hospital regulations don't create a private right of action. *See, e.g.*, *Newman v. Katz*, No. 24-CV-6681 (LLS), 2025 WL 2171803, at *4 (S.D.N.Y. July 29, 2025) (applying New York law) ("Although a violation of that [hospital] regulation may be cited in support of a medical malpractice cause of action based upon a violation of a standard of care, a violation of that regulation does not give rise to an independent private right of action." (quotation cleaned up)); *Howard v. Estate of Harper ex rel. Harper*, 947 So.2d 854, 860 (Miss. 2006) ("[W]e hold that Minimum Standards, which serve as internal licensing regulations, do not create a separate cause of action nor establish a duty of care owed by nursing home administrators and licensees to nursing home patients.").

In short, the court concludes that Kan. Admin. Reg. § 28-34-13 doesn't generate a private cause of action that can support plaintiffs' negligence-per-se claims. Before moving on, the court clarifies one aspect of its holding about both federal regulations and Kansas regulations: these regulations can't support a negligence-per-se claim. But that's not to say plaintiffs can't use them to establish or inform the standard of care. *See Doe v. Lyft, Inc.*, 756 F. Supp. 3d 1110, 1128 (D. Kan. 2024) (explaining that plaintiffs can use laws "to establish the duty of care and a breach of that duty" even when those laws can't support a negligence-per-se theory).[3]

---

[3]     There's a minor party-presentation issue here. Just one of the pending motions argues that the Kansas regulations don't furnish a private cause of action for purposes of a negligence-per-se claim. Doc. 34 at 4–5. The other pending motions argue only that the federal regulations that the Petition cites can't support a negligence-per-se claim. *E.g.*, Doc. 7 at 6–7; Doc. 25 at 4–5. Still, the court decides this issue as it applies to all defendants. That's appropriate because those defendants who haven't moved to dismiss plaintiffs' negligence-per-se claim "are in a similar position to that of" the defendants who moved to dismiss this claim. *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981). In other words, the court's legal holding applies equally to all defendants. So, the court dismisses plaintiffs' negligence-

### 3.    Missouri Regulations

Finally, plaintiffs cite a series of Missouri regulations to support their negligence-per-se claims.  Doc. 1-3 at 36–37 (Pet. ¶¶ 189–93).  When pressed on the relevance of these regulations, plaintiffs argue that they "show[] the breadth of the negligence per se as Defendants Saint Luke's facilities span two states."  Doc. 30 at 8.  Plaintiffs are mistaken.  Missouri regulations can't support a Kansas negligence-per-se claim.  Here's why.

Recall that this court, a federal court sitting in Kansas, applies Kansas's choice-of-law rules.  *Nordwald*, 603 F. Supp. 3d at 1040.  "Kansas choice-of-law rules do not approve of depecage"—meaning "the application of the law of the different states to different issues" within the same claim.  *Keller N. Am., Inc. v. Berkel & Co. Contractors, Inc.*, No. 24-2477-JAR-BGS, 2025 WL 579713, at *4 (D. Kan. Feb. 21, 2025) (quotation cleaned up).  Expressed in more common terms, Kansas choice-of-law rules call for one jurisdiction's laws to apply to "the whole claim," including that claim's "subsidiary issues."  *Id.*  Having already decided that Kansas choice-of-law rules call for the court to apply Kansas's substantive law to plaintiffs' claims, *see above* n.1, Missouri law—including its administrative regulations—have no application to plaintiffs' negligence-per-se claims.  The court thus dismisses plaintiffs' negligence-per-se claims in their entirety.

Next, the court addresses plaintiffs' claims based on violations of the KCPA.

### B.    KCPA

Plaintiffs allege a violation of the KCPA against the Saint Luke's defendants.  Doc. 1-3 at 44–45 (Pet. ¶¶ 229–36).  Their claim asserts that the Saint Luke's defendants engaged in an

---

per-se claim based on Kan. Admin. Reg. § 28-34-13 against all defendants, notwithstanding any party-presentation concerns.  *See Markley v. U.S. Bank Nat'l Assoc.*, 142 F.4th 735, 742 (10th Cir. 2025) ("[T]he court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.").

unlawful and unfair practice by failing to sterilize equipment properly but still charging plaintiffs for their surgeries.

The KCPA contains a provision which limits its reach for claims based on medical negligence. This provision reads like this: "The Kansas consumer protection act does not allow for a private cause of action or remedy against a licensed health care provider for causes of action for personal injury or death resulting, or alleged to have resulted, from medical negligence." Kan. Stat. Ann. § 50-635(b). Seizing on this statutory provision, defendants argue that plaintiffs' KCPA claim isn't viable. Plaintiffs, for their part, argue that they "do not seek a remedy under the KCPA for personal injury or death." Doc. 23 at 13. Instead, they assert, their case brings "a cause of action in equity." *Id.* The court understands plaintiffs' argument to say that they don't seek damages for personal injury under the KCPA and instead seek to recover money they lost when they paid for their medical procedures. *See id.* at 13–14. In other words, plaintiffs claim a financial injury—not personal injury—to support their KCPA claims. Plaintiffs' argument might have merit.

Our court has explained that Kan. Stat. Ann. § 50-635(b) precludes claims based on "misrepresentations and omissions relating to" plaintiffs' surgeries. *Luttrell v. Brannon*, No. 17-2137-JWL, 2018 WL 3032993, at *12 (D. Kan. June 19, 2018). Thus, plaintiffs' claims based on personal injuries they allegedly suffered after their injuries aren't viable. But this provision doesn't apply to "purely financial injur[ies][.]" *Id.* at *13. So, claims based on improper billing fall beyond § 50-635(b)'s exclusion. *Id.* Here, plaintiffs claim that the Saint Luke's defendants billed them for services—*i.e.*, surgeries performed in a sterile environment—they never received. *See* Doc. 1-3 at 44 (Pet. ¶ 230). Because these claims plausibly allege that plaintiffs suffered a

10

purely financial injury, the court won't dismiss plaintiffs' KCPA claims to the extent they're based on defendants' allegedly wrongful billing of plaintiffs.[4]

The court now pivots to plaintiffs' malpractice and negligence claims.

### C.    Subsumed Claims

The thrust of defendants' motions is that plaintiffs' medical-malpractice claim subsumes most of their other claims.  The court agrees in large measure.

Under Kansas law, a claim for medical "'malpractice covers every way in which a patient is injured through the dereliction of a doctor in his professional capacity[.]'" *Kelly v. VinZant*, 197 P.3d 803, 809 (Kan. 2008) (quoting *Bonin v. Vannaman*, 929 P.2d 754, 764 (Kan. 1996)).  A medical-malpractice claim is just a specific type of negligence claim—one that's asserted against a healthcare provider.  *See Puckett v. Mt. Carmel Reg'l Med. Ctr.*, 228 P.3d 1048, 1060 (Kan. 2010).  Plaintiffs can assert negligence claims against medical institutions like hospitals, too. *See Malone v. Univ. of Kan. Med. Ctr.*, 552 P.2d 885, 888–89 (Kan. 1976) (describing duty hospitals owe patients).[5]

---

[4]    The Saint Luke's defendants never grapple with this exception to the scope of Kan. Stat. Ann. § 50-635(b).  In their defense, plaintiffs' briefing on the issue wasn't entirely clear.  *See* Doc. 21 at 13. Still, Kansas law places the burden of establishing this defense on defendants.  Kan. Stat. Ann. § 50-635(c).  And defendants, at least on the current briefing, haven't carried their burden to show that this defense applies to plaintiffs' KCPA claims predicated on billing.

[5]    Although Kansas law isn't entirely clear on this point, it appears plaintiffs may not assert medical-malpractice claims directly against institutional defendants.  That's so because, "to prove a medical malpractice claim under Kansas law, a plaintiff must show that a duty was owed by the physician to the patient." *Talavera ex rel. Gonzalez v. Wiley*, 725 F.3d 1262, 1269 (10th Cir. 2013).  "'Absent the existence of a physician-patient relationship, there can be no liability for medical malpractice.'" *Id.* (quoting *Irvin v. Smith*, 31 P.3d 934, 942 (Kan. 2001)).  Indeed, many Kansas cases describe the elements of medical malpractice as requiring the misconduct of a physician. *E.g.*, *Nold ex rel. Nold v. Binyon*, 31 P.3d 274, 285 (Kan. 2001); *Esquivel v. Watters*, 183 P.3d 847, 850 (Kan. 2008).  And *Malone* suggests that the breach of a duty by a physician is "malpractice" while the breach by a hospital is "negligence." 552 P.2d at 888.  Consistent with Kansas law, the court thus understands medical malpractice to refer to "the dereliction of a doctor in his professional capacity[.]" *Kelly*, 197 P.3d at 809 (quotation cleaned up).

11

The Kansas Supreme Court has explained that claims for medical malpractice subsume most other claims that allege wrongdoing by physicians in performing their professional duties. *See Bonin*, 929 P.2d at 764–65. "'Certain duties and obligations are imposed upon physicians and hospitals by law. Breach of such duty by a physician is malpractice, and an action for damages for malpractice is one in tort, even though there was a contract, express or implied, for employment.'" *Bonin*, 929 P.2d at 763 (quoting *Malone*, 552 P.2d at 888). So, when a claim alleges "dereliction of a doctor in his professional capacity," the claim is one "for malpractice, not one for deceit, contract, or anything else." *Id.* at 764–65 (quotation cleaned up); *see also Noel v. Proud*, 367 P.2d 61, 66 (Kan. 1961) (explaining that the "improper performance by a physician or surgeon of the duties imposed upon him by reason of the professional services undertaken" is a claim for "malpractice" even if there is an implied or express contract between the parties). This rule doesn't mean that a doctor never can incur liability for fraud or breach of contract. It "simply means that a fraud or breach of contract cause of action can only be based upon a physician's misconduct if that misconduct is beyond a breach of the legal duty which every doctor has the obligation to uphold." *Kelly*, 197 P.3d at 809 (quotation cleaned up). For instance, imagine a physician who makes fraudulent statements after performing an operation on a patient. The physician makes the untrue statements intending to conceal his malpractice during the surgery. Kansas law permits a victim harmed by the doctor's false statements to hold the doctor responsible for that fraud because that misconduct is distinct from his duty to his patients. *See id.* at 810.

This rule applies equally to negligence claims against medical institutions. An "action for damages against a hospital for negligence, i.e., for breach of duties imposed by law, sounds

in tort" even "though there may be a contract between the parties." *Malone*, 552 P.2d at 888. The court now applies these doctrines to plaintiffs' claims here.

As the court explains next, the court concludes that plaintiffs' negligence and medical-malpractice claims subsume their claims for fraud, breach of implied and express contract, unjust enrichment, and breach of fiduciary duty.[6]

### 1.     Fraud

Plaintiffs' fraud claim alleges that defendants defrauded plaintiffs by promising them "proper medical services" and depriving them of that benefit by charging them despite "improper sterilization practices and procedures." Doc. 1-3 at 51 (Pet. ¶¶ 269–70). This claim is no different than plaintiffs' negligence and malpractice claims. *E.g.*, *Kelly*, 197 P.3d at 810 ("[W]hen fraud is a part of the informed consent process, the claim is for malpractice, not fraud."); *Luttrell*, 2018 WL 3032993, at *10 (dismissing fraud claim because malpractice claim subsumed it). Plaintiffs argue that they've alleged fraud that goes beyond the duty that every physician is bound to uphold. *See* Doc. 21 at 3. But they never explain why that is so. Nor do the factual allegations explain it either. None of them allege facts that, if true, place defendants' alleged fraud beyond the duty every physician is required to uphold. Instead, as in *Luttrell*, "plaintiff[s] ha[ve] alleged fraud based on the same facts that form the basis for [their] malpractice claim," and they have not "alleged any separate damages resulting from the fraud."

---

[6]     Plaintiffs' malpractice and negligence claims don't subsume their KCPA claim because that claim is "based upon a statutorily created cause of action" that includes "a different remedy[.]" *Kelly*, 197 P.3d at 810–11 (explaining that malpractice claims don't subsume a KCPA claim).

*Luttrell*, 2018 WL 3032993, at *10. Under Kansas law, such a fraud claim isn't viable. So the court dismisses it.[7]

The court takes up plaintiffs' remaining claims next.

### 2.    Breach of Contract, Unjust Enrichment, and Breach of Fiduciary Duty

Plaintiffs' remaining claims—breach of fiduciary duty, breach of express contract, breach of implied contract, and unjust enrichment—aren't viable either. These claims also seek recovery based on the same allegations that support plaintiffs' malpractice claims. For instance, plaintiffs' breach-of-fiduciary duty claim asserts that defendants violated a fiduciary duty by failing to protect plaintiffs from unsafe sterilization practices. Doc. 1-3 at 38 (Pet. ¶ 200). Their contract claims allege that defendants violated contractual duties by "failing to implement and maintain reasonable sterilization practices[.]" *Id.* at 40, 41–42 (Pet. ¶¶ 210, 215). And their unjust-enrichment claim asserts that defendants deprived them of a benefit by failing to adopt and implement appropriate sterilization procedures. *Id.* at 43–44 (Pet. ¶ 226). Once more, these allegations are the same ones supporting plaintiffs' negligence and malpractice claims. Plaintiffs' malpractice and negligence claims thus subsume their claims for breach of fiduciary duty, breach of express contract, breach of implied contract, and unjust enrichment. *See Bonin*, 929 P.2d at 763 (explaining that breach of a professional duty "by a physician is malpractice" and "an action for damages against a hospital for negligence . . . sounds in tort" and this is true "even though there was a contract between the parties"). And as with their fraud theory, plaintiffs haven't "alleged any separate damages resulting" from defendants violating contracts. *Luttrell*, 2018 WL 3032993, at *10. So, the court dismisses these claims.

---

[7]    Because plaintiffs haven't stated a fraud claim distinct from their negligence and malpractice claims, the court needn't reach the argument that plaintiffs failed to plead their fraud claim with particularity. *See* Doc. 34 at 6.

The court turns next to plaintiffs' negligence claim.

### 3.    Negligence

Defendants also ask the court to dismiss plaintiffs' negligence claim, again arguing that their medical-malpractice claim subsumes it.  Doc. 25 at 3.  The court agrees, but only in part.

As already discussed, medical malpractice refers to "dereliction of a doctor in his professional capacity[.]"  *Kelly*, 197 P.3d at 809 (quotation cleaned up).  The Petition alleges that the doctor-defendants—Krumme, Grobleny, Koreckij, Roberts, Eagan, and Shook—committed malpractice by negligently rendering medical services.  But plaintiffs haven't alleged that these doctors committed negligence outside their professional duties.  Plaintiffs' medical-malpractice claims against these defendants thus subsume their negligence claims.  So, the court dismisses plaintiffs' negligence claims against defendants Krumme, Grobleny, Koreckij, Roberts, Eagan, and Shook.

But the court reaches a different conclusion for the institutional defendants.  Recall that plaintiffs can't assert direct claims for medical malpractice against these defendants because they aren't physicians.  *See above* n.5; *Talavara*, 725 F.3d at 1269 ("Absent the existence of a physician-patient relationship, there can be no liability for medical malpractice." (quotation cleaned up)).  Still, the Petition asserts that these defendants are vicariously liable for medical malpractice under a respondeat-superior theory of liability.  Doc. 1-3 at 50 (Pet. ¶¶ 262–66).  The current motion doesn't challenge that theory, so the court declines to dismiss plaintiffs' medical-malpractice claims against the institutional defendants.

Apart from their respondeat-superior theory, plaintiffs also assert negligence claims against the institutional defendants.  Plaintiffs allege that these defendants failed to:  adopt and implement adequate policies for sterilization; train their staff adequately; hire competent staff; and respond to reports of unsterile equipment.  *Id.* at 31–34.  These allegations involve

wrongdoing outside a physician-patient relationship and thus don't constitute medical-malpractice under Kansas law. *See Talavara*, 725 F.3d at 1269. So, plaintiffs' malpractice claims don't subsume their negligence claims against the institutional defendants. The court thus denies the institutional defendants' requests to dismiss plaintiffs' negligence claims against them.[8]

To summarize, the court dismisses plaintiffs' claims for breach of fiduciary duty; breach of express contract; breach of implied contract; unjust enrichment; and fraud. Plaintiffs' medical-malpractice or negligence claims subsume these other claims. The court also dismisses plaintiffs' negligence claims against the doctor-defendants because these claims are no different than their malpractice claims. But the court declines to dismiss plaintiffs' negligence claims against the institutional defendants because plaintiffs have pleaded a theory of liability against these defendants that is distinct from their malpractice claims.

## IV.      Conclusion

Plaintiffs' negligence-per-se claims aren't viable because they haven't identified a law for which the legislature intended to create a cause of action. So, the court dismisses those claims. Likewise, plaintiffs' KCPA claims aren't viable to the extent they seek recovery for

---

[8]      Some of the moving defendants also ask the court to dismiss plaintiffs' negligence claim under the Rule 8 standard. Doc. 25 at 3–4; Doc. 7 at 5–6. Rule 8 requires a pleading to state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court declines defendants' invitation. "The policy behind Rule 8 is to 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Schupper v. Edie*, 193 F. App'x 744, 745–46 (10th Cir. 2006) (quoting *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993)). Although the Petition pleads some allegations against defendants as an undifferentiated group, Doc. 1-3 at 32–35 (Pet. ¶ 183), it also levies specific allegations against each defendant. And the theory of plaintiffs' claims is a straightforward one: defendants failed to exercise care to ensure that surgical instruments were sterile. While the Petition occasionally lacks clarity about which defendants were responsible for what conduct, the Petition, as a whole, sufficiently communicates which defendants "plaintiffs are suing for what wrongs[.]" *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007). The court thus declines to dismiss plaintiffs' surviving negligence and malpractice claims under the Rule 8 standard.

personal injury or death.  But the court declines to dismiss plaintiffs' KCPA claims predicated on wrongful billing.

Under Kansas law, medical-malpractice claims and negligence claims subsume contract and fraud theories.  So, the court dismisses plaintiffs' claims which seek relief for breach of fiduciary duty; breach of express contract; breach of implied contract; unjust enrichment; and fraud.  The court dismisses plaintiffs' negligence claims against the doctor-defendants—Krumme, Grobleny, Koreckij, Roberts, Eagan, and Shook—because they're no different than plaintiffs' malpractice claims.  But plaintiffs' negligence claims against the institutional defendants—Dickson-Diveley Midwest Orthopedic Clinic, LLC; Advanced Orthopedics and Sports Medicine, PA; and the Saint Luke's defendants—survive because these negligence claims are distinct from the malpractice claims.

In short, after this Order, plaintiffs have three viable causes of action:  malpractice (against all defendants); negligence (against the institutional defendants); and violations of the KCPA based on wrongful billing (against the Saint Luke's defendants).[9]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants Bartosz T. Grobelny and John W. Shook's Motion to Dismiss (Doc. 7) is granted.

**IT IS FURTHER ORDERED THAT** defendant Spencer L. Eagan's Motion to Dismiss (Doc. 12) is granted.

---

[9]    Plaintiffs filed a Motion to Strike (Doc. 29), asking the court to strike defendant Spencer L. Eagan's untimely reply brief (Doc. 28).  Eagan never responded.  Our local rules explain that if "a response is not filed by the applicable deadline, the court will consider and decide the motion as an uncontested motion."  D. Kan. Rule 7.1(c).  The court thus grants plaintiffs' Motion to Strike (Doc. 29) as uncontested and directs the Clerk of Court to show that the court struck Eagan's reply brief (Doc. 28) as untimely.

**IT IS FURTHER ORDERED THAT** defendants Saint Luke's Health System, Inc.; Saint Luke's Hospital of Kansas City; Saint Luke's Physician Group, Inc.; and Saint Luke's South Hospital, Inc.'s Motion to Dismiss (Doc. 15) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** defendants Dickson-Diveley Midwest Orthopedic Clinic, LLC; Theodore Koreckij; and John W. Krumme's Motion for Judgment on the Pleadings (Doc. 25) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** defendants Advanced Orthopedics and Sports Medicine, PA; and Tim Roberts's Motion for Judgment on the Pleadings (Doc. 34) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** plaintiffs' Motion to Strike (Doc. 29) is granted. The court directs the Clerk of Court to show that the court struck Eagan's untimely reply brief (Doc. 28) as untimely.

**IT IS SO ORDERED.**

**Dated this 18th day of March, 2026, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

18